**2014-1653**

# United States Court of Appeals
# for the Federal Circuit

LUV N' CARE, LTD.,

*Appellant,*

v.

MUNCHKIN, INC. AND TOYS "R" US, INC.,

*Appellees.*

*Appeal from the U.S. Patent Trial and Appeal Board Decision in No. IPR2013-0007, Administrative Patent Judges Fitzpatrick, Bisk and Wood.*

## BRIEF OF THE APPELLANT

Edward D. Manzo, *Lead Counsel for Appellant*
George S. Pavlik
Daniel Kim
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Telephone: 312-655-1500

Hartwell P. Morse, III
Luv n' care, Ltd.
3030 Aurora Avenue
Monroe, Louisiana 71201
Telephone: 318-338-3108
*Counsel for Appellant*
*Luv N' Care, Ltd.*

September 12, 2014

# CERTIFICATE OF INTEREST

The undersigned counsel for Appellant certifies the following:

1.    The full name of every party represented by me is:

Luv N' Care, Ltd.
3030 Aurora Avenue
Monroe, Louisiana 71201

2.    The name of the real party in interest represented by me is:

Luv N' Care, Ltd.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

None.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:

HUSCH BLACKWELL LLP
    Edward D. Manzo, *Lead Counsel for Appellant*
    George S. Pavlik
    Daniel Kim

Goldberg Cohen LLP
    Morris E. Cohen
    Lee A. Goldberg

Luv n' care, Ltd.
    Hartwell P. Morse, III

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES .................................................................v

ABBREVIATIONS USED IN THIS BRIEF ................................................ xi

STATEMENT OF RELATED CASES ..................................................... xii

JURISDICTIONAL STATEMENT ....................................................... xii

INTRODUCTION ............................................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE...............................................................2

STATEMENT OF FACTS ...................................................................3

    A.    The Parent '106 Utility Application......................................3

    B.    The Spout Shape in the '106 Application ...............................7

    C.    The '465 Design Patent at Issue .........................................11

    D.    The Petition and Decision to Institute ..................................17

    E.    LNC's Opposition to the Decision.......................................20

    F.    LNC's Motion to Amend the Claim ....................................21

    G.    Munchkin's Reply to LNC's Response to the Decision to Institute ...................................................................21

    H.    The Final Written Decision ...............................................21

SUMMARY OF ARGUMENT ............................................................23

ARGUMENT ...............................................................................................27

I.    The Standard of Review ...................................................................27

II.   The PTAB Announced One Set of Issues for Trial and
      then Decided the Case on Other Issues, Denying LNC
      Notice and the Opportunity to Present Material Evidence
      on the Other Issues ..........................................................................28

      A.    U.S. Law Demands Fundamental Fairness and an
            Opportunity to Present Evidence ...............................................28

      B.    The PTAB Declares the Issues for Trial When It
            Decides to Institute Trial ...........................................................32

      C.    LNC Was Denied Timely Notice of Certain Issues
            Which the PTAB Relied On in its Final Written
            Decision .....................................................................................35

III.  The Inventor Was In Possession of the Design Invention
      as of the Filing Date of the Parent '106 Application .........................36

      A.    Legal Standards for Design Patent Assertions of
            Priority .......................................................................................36

      B.    An Inventor May Conform the Drawings to Other
            Drawings or a Written Description .............................................43

      C.    The '465 Design Patent is Entitled to the Priority
            Date of the Parent '106 application ...........................................45

            1.    The parent utility application shows the
                  major design aspects shown in the design
                  patent drawings ................................................................45

            2.    The top view issues ...........................................................46

            3.    Claim construction of the '465 design patent ..................48

4.      Under the proper claim interpretation the
        parent '106 application shows that the
        inventor was already in possession of the
        third ring (D3) shown in Fig. 3 of the design
        patent.............................................................................50

5.      The third concentric ring (D3) is necessarily
        larger but the spout tip is not larger than
        shown in the parent '106 application.............................57

6.      The inventor was in possession of the shape
        of the "oval"...................................................................59

7.      Conclusion concerning the spout....................................63

8.      The "raised rim" is not an issue for this
        appeal ..............................................................................65

IV.   The PTAB Failed to Hold Munchkin to Its Burden Of
       Proof for Establishing Inadequate Written Description in
       the Parent '106 Application..................................................66

CONCLUSION ....................................................................................69

ADDENDUM ....................................................................................A1

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Page(s)*

**Federal Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
  314 F.3d 1313 (Fed. Cir. 2003) ............................................................67

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
  598 F.3d 1336 (Fed. Cir. 2010) ...........................................................67

*Arminak and Assoc., Inc. v. Saint-Gobain Calmar, Inc.,*
  501 F.3d 1314 (Fed. Cir. 2007) ...........................................................49

*Boumediene v. Bush,*
  553 U.S. 723, 128 S.Ct. 2229 (2008)...................................................30

*Chef'n Corp. v. Trudeau Corp.,*
  2009 WL 1564229 (W.D. Wash. June 4, 2009) ...................................56

*Chemcast Corp. v. Arco Industries Corp.,*
  913 F.2d 923 (Fed. Cir. 1990) .............................................................68

*Christopher v. SmithKline Beecham Corp.,*
  132 S.Ct. 2156 (2012)..........................................................................29

*Contessa Food Products, Inc. v. Conagra, Inc.,*
  282 F.3d 1370 (Fed. Cir. 2002) ...........................................................49

*Creed v. Potts,*
  25 CCPA 1084, 96 F.2d 317 (CCPA 1938) ......................................434

*Crown, Cork & Seal Co., Inc. v. Parker,*
  462 U.S. 345, 103 S.Ct. 2392 (1983)...................................................29

*Fletcher v. U.S.,*
  201 Ct. Cl.  698, 478 F.2d 1380 (U.S. Court of Claims 1973)............44

*General Electric Co. v. U.S. EPA,*
  53 F.3d 1324 – 1329 (D.C. Cir. 1995) ........................................................... 31, 32

*General Electric v. Cooper Hewitt,*
  249 F. 61 (6th Cir. 1918) ................................................................ 44, 44

*Hall v. Florida,*
  --U.S.--, 134 S.Ct. 1986 (2014) ........................................................... 29

*Hobbs v. Beach,*
  180 U.S. 383 (1901) ............................................................................ 44

*In re Am. Acad. of Sci. Tech. Ctr.,*
  367 F.3d 1359 (Fed. Cir. 2004) ......................................................... 27

*In re Baker Hughes Inc.,*
  215 F.3d 1297 (Fed. Cir. 2000) ......................................................... 28

*In re Benno,*
  768 F.2d 1340 (Fed. Cir. 1985) ......................................................... 44

*In re Campbell,*
  41 CCPA 896, 212 F.2d 606, *cert. denied*, 348 U.S. 858 (1954) ........................ 40

*In re Daniels,*
  144 F.3d 1452 (Fed. Cir. 1998) ....................................................... 27, 40, 42, 45

*In re Gartside,*
  203 F.3d 1305 (Fed. Cir. 2000) ......................................................... 27

*In re Gosteli,*
  872 F.2d 108 (Fed. Cir. 1989) ........................................................... 42

*In re Mouttet,*
  686 F.3d 1322 (Fed. Cir. 2012) ......................................................... 27

*In re Owens,*
  710 F.3d 1362 (Fed. Cir. 2013) ....................................................... 42, 43

*In re Rubinfield,*
47 C.C.P.A. 701, 270 F.2d 391 (CCPA 1959) ....................................................49

*In re Salmon,*
705 F.2d 1579 (Fed. Cir. 1983) ............................................................... 36, 38, 39

*Irise v. Axure Software Solutions, Inc.,*
2009 WL 3615075 (C. D. Cal. Sept. 11, 2009) ....................................................68

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,*
997 F.2d 1444 (Fed.Cir.1993) ...............................................................49

*Kolmes v. World Fibers Corp.,*
107 F.3d 1534 (Fed. Cir. 1997) ...............................................................44

*Kubota v. Shirbuya,*
999 F.2d 517 (Fed. Cir. 1993) ...............................................................66

*Lane Hollow Coal Co. v. Director, OWCP,*
137 F.3d 799 (4th Cir. 1998) ...............................................................32

*Lonchar v. Thomas,*
517 U.S. 314, 116 S.Ct. 1293 (1996)....................................................29

*Long Island Care at Home, Ltd. v. Coke,*
551 U.S. 158, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007)........................................28

*Luv N' Care, Ltd. et al. v. Regent Baby Products Corp.,*
10-9492 (S.D.N.Y. filed Dec. 21, 2010)............................................... xii

*Luv N' Care, Ltd. et al. v. Toys "R" Us, Inc. et al.,*
1:12-cv-00228 (S.D.N.Y. filed Jan. 11, 2012) .................................... xii

*Luv N' Care, Ltd. v. Royal King Infant Prods Co. Ltd. et al.,*
10-cv-00461 (E.D. Tex. filed Nov. 4, 2010) ...................................... xii

*Macklin v. Butler,*
553 F.3d 525 (7th Cir. 1977) ...............................................................30

*Martin v. Memorial Hosp. at Gulfport,*
130 F.3d 1143 (5th Cir. 1997) ..................................................... 30-31

*Martin v. Occupational Safety and Health Review Comm'n,*
499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991)......................................29

*Miller v. Eagle Mfg. Co.,*
151 U.S. 186, 14 S.Ct. 310 (1894)......................................................45

*Miller v. Lorain County Bd. of Elections,*
141 F.3d 252 (6th Cir. 1998) ...............................................30

*Neal v. Shimoda,*
131 F.3d 818 (9th Cir. 1997) ...............................................31

*NLRB v. Bell Aerospace Co.,*
416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)..........................................29

*Old Chief v. U.S.,*
519 U.S. 172, 117 S.Ct. 644, 182 (1997).............................................29

*Peters v. Active Manufacturing Co.,*
129 U.S. 530, 9. S Ct. 389 (1989)......................................................45

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) ...............................................48

*Propert v. District of Columbia,*
948 F.2d 1327 (D.C. Cir. 1991).............................................31

*Racing Strollers, Inc. v. TRI Industries, Inc.,*
878 F.2d 1418 (Fed. Cir. 1989) ...............................................39

*Rambus Inc. v. Rea,*
731 F.3d 1248 (Fed. Cir. 2013) ...............................................27

*Satellite Broadcasting Co. v. FCC,*
824 F.2d 1 (D.C. Cir. 1987)...............................................31

*Scanner Technologies Corp. v. Icos Vision Systems Corp.,*
  N.V.,  253 F.Supp.2d 624 (S.D.N.Y  2003) .........................................67

*Simons v. City of Grand Forks,*
  935 F.2d 981 (8th Cir. 1993) ..............................................................32

*SIPCO, LLC v. Abb, Inc.,*
  2012 WL 3112302 (E.D. Tex. 2012) ...................................................68

*Star Scientific Inc. v. R.J. Reynolds Tobacco Co.,*
  2004 WL 5683181 (D. Md. Jan. 27, 2004).........................................68

*Therasense, Inc. v. Becton, Dickinson and Co.,*
  649 F.3d 1276 (Fed. Cir. 2011) ..........................................................29

*Vas–Cath Inc. v. Mahurkar,*
  935 F.2d 1555 (Fed. Cir. 1991) ............................................... 44-45, 67

*White v. New Hampshire Dept. of Employment Sec.,*
  455 U.S. 445, 102 S.Ct. 1162 (1982)...................................................29

*Yellow Freight System, Inc. v. Martin,*
  954 F.2d 353 (6th Cir. 1992) ..............................................................31

## Statutes

5 U.S.C. § 554(b) .................................................................................31

28 U.S.C. § 1295(a)(4)(A) ................................................................. xii

35 U.S.C. § 103 ...................................................................................27

35 U.S.C. § 112 ........................................................................ 39, 41, 68

35 U.S.C. § 132 ...................................................................................44

35 U.S.C. § 120 ....................................................... 27, 37, 40, 41, 42

35 U.S.C. § 141(c) .............................................................. xii

35 U.S.C. § 316(a)(11) ...........................................................34

35 U.S.C. § 316(b) ................................................................34

35 U.S.C. § 316(e) ................................................... 26, 66, 68

35 U.S.C. § 319 .................................................................. xii

## Rules and Regulations

37 C.F.R. 1.152 ....................................................................55

65 Fed. Reg. 54674 ..............................................................55

77 Fed. Reg. 48755–48773 ..................................................33

77 Fed. Reg. 48755 ..............................................................34

77 Fed. Reg. 48757 ..............................................................34

## Other Authorities

Manual of Patent Examining Procedure §1503.02 ...................43

Wright, § 8112, Vol. 32 ........................................................31

Wright, § 8126, Vol. 32 ........................................................30

Wright, § 8127, Vol. 32 ........................................................30

Wright, § 8222, Vol. 32 ........................................................32

# ABBREVIATIONS USED IN THIS BRIEF

| | |
|---|---|
| '106 application | Hakim, U.S. serial number 10/536,106 utility patent application filed as PCT/US 2003/024400 on August 5, 2003 (Ex. 3001); A688 et seq. |
| '225 patent | Hakim, U.S. Patent 6,994,255 issued Feb. 7, 2006, claiming priority to the '669 provisional application (Ex. 1013); A492 et seq. |
| '465 design patent | Hakim, U.S. D617,465 S filed Oct. 31, 2007 as a continuation of the '106 application (Ex. 1002); A318 et seq. |
| '604 publication | Hakim, Sept. 27, 2007, U.S. patent publication no. 2007/0221604 A1 (Ex.1006); the publication of the '106 appln.; A423 et seq. |
| '669 application | Hakim, U.S. provisional patent appln. 60/400,669 |
| A | Appendix |
| LNC | Patent owner Luv 'n care, Ltd. |
| PTAB or "Board" | Patent Trial and Appeal Board |

## STATEMENT OF RELATED CASES

U.S. Design Patent 617,465 is at issue in *Luv N' Care, Ltd. et al. v. Toys "R" Us, Inc. et al.*, 1:12-cv-00228 (S.D.N.Y. filed Jan. 11, 2012).  Other related litigation includes *Luv N' Care, Ltd. et al. v. Regent Baby Products Corp.*, 10-9492 (S.D.N.Y. filed Dec. 21, 2010) and *Luv N' Care, Ltd. v. Royal King Infant Prods Co. Ltd. et al.*, 10-cv-00461 (E.D. Tex. filed Nov. 4, 2010).

Also, an *Inter Partes* Reexamination bearing control no. 95/001,973 is pending concerning a related U.S. Patent D634,439.

## JURISDICTIONAL STATEMENT

This is an appeal from a Final Written Decision of the Patent Trial and Appeal Board in an *inter partes* review. This Court has jurisdiction pursuant to 35 U.S.C. §§ 141(c) and 319, and 28 U.S.C. §1295(a)(4)(A).

## INTRODUCTION

The PTAB in an *inter partes* review determined that U.S. Design Patent 617,465 is not entitled to the filing date of its parent '106 application. As such, the PTAB invalidated the '465 design patent for obviousness over the publication of the parent '106 application or the publication of another related patent with the same disclosure before the actual filing date of the design patent. If the design patent is entitled to the earlier filing date, as patent owner LNC asserts, then neither of these citations qualifies as prior art.

LNC appeals the judgment on the bases of two procedural errors by the PTAB and on the merits of the ruling.

## STATEMENT OF THE ISSUES

1. Should the PTAB final decision be vacated because it relied on issues not included in its Decision to Institute IPR, thereby denying LNC fair notice and an opportunity timely to introduce evidence and argument as to the unknown issues?

2. Did Munchkin prove that the '465 design patent is not entitled to the filing date of its parent '106 application?

3.    Was the PTAB's decision that the '106 application lacks written description support for the claim of the '465 design patent in error on account that it did not consider Munchkin's burden of proof?

## STATEMENT OF THE CASE

This case commenced on December 5, 2012 when Munchkin, Inc. and Toys "R" Us, Inc. (collectively, "Munchkin") filed a petition at the PTAB requesting *inter partes* review of the '465 design patent owned by LNC. On April 25, 2013, the PTAB instituted the *inter partes* review of the '465 design patent.

After an oral hearing, on April 21, 2014, the PTAB rendered a Final Written Decision holding the '465 design patent unpatentable and denying LNC's motion to amend the claim.

On June 16, 2014, LNC timely filed a Notice of Appeal from the Final Written Decision. No cross-appeals have been filed.

## STATEMENT OF FACTS

This case involves a drinking cup having a lid which includes a spout, sometimes called a drinking tip. At the outset, we set forth terminology for various parts of a lid at the center of this case.  Figure 8D (A742) of the '106 application is annotated below to show this terminology:



Thus, such a lid includes a pancake portion from which a spout rises. The spout includes a spout tip and a spout base at different elevations.

### A.    The Parent '106 Utility Application

On August 5, 2002, Mr. Nouri Hakim of Monroe, Louisiana filed provisional patent application 60/400,669 entitled "No-Spill Products." One year later, he filed PCT/US 2003/024400 which received U.S. serial number 10/536,106

(A688 et seq.; Ex. 3001). That '106 application is not only the parent of the '465 design patent but also became, when published as the '604 publication (A424-456; Ex 1006), the primary reference over which the '465 design patent was invalidated by the PTAB. The other primary reference is the Hakim '225 patent (A493-523; Ex. 1013) which derives from the same provisional application.

The '106 application concerns no-spill drinking products. A688. Mr. Hakim invented improvements on "nipples and baby bottles which would eliminate leakage." A689.  Several drawing sheets of the '106 application depict a no-spill baby  nipple. A730-741. Figure 1A (shown at right) shows a concave, reentrant portion at the tip of the nipple. The bottom of the reentrant portion contains one or more no-spill valves. Figures 1-7 show embodiments of the no-spill nipple structure.

The '106 application also disclosed use of the no-spill valves in drinking cups. The specification mentions a drinking cup in the form of a "trainer cup," A692, and indicates that the no-spill valves can be used in cups for use by "an older child or adult." A695.

Figures 8–12 of the '106 application illustrate lids and drinking cups with no-spill valves. Figures 8-9 show a lid using the no-spill valves but without showing an attached cup. A742-743. Figures 10B-C (below) show a cap connected

to the bottle or "cup" 491. A744. The cap includes a lid portion 480 and a ring 468

having finger grips 497 on the exterior.



In describing various embodiments, the specification and drawings use the

following reference numbers to denote various parts:

| | |
|---|---|
| 437 | No-spill valve |
| 466 | No-spill cap |
| 468 | Screw ring |
| 480 | lid portion |
| 484 | Spout |
| 491 | Cup |

| | |
|---|---|
| 492 | Grip |
| 494 | Notch |
| 497 | Finger grips on screw ring |
| 500 | Vent |
| Unnumbered | Decorative "cape" on cup body |

The cup has a cinched waist but is not symmetric front-to-back, as Fig. 10B shows. Looking at Figs. 10B-C, the line connecting reference numeral 491 to the drawing actually points to a decorative, ornamental structure that is not given a name in the specification. In the side view (Fig. 10B), this large feature is located in the upper portion of the cup and includes a major curved line circumnavigating the cup. Figure 10C shows that at the front of the cup, this prominent ornamental feature descends into the cinched waist. This ornamental feature could be called a "decorative cape," and a label has been added to it for ease of discussion.

In addition to the decorative cape, the cup includes curved ridges 492 on the back and sides of the cup which the specification describes as finger grips for the user. The finger grips are not on the front of the cup. Thus, looking at Fig. 10B (side view) the cup is clearly asymmetric, having a profile on the left (the front of the cup) that is gently curved whereas the profile on the right (the rear of the cup) has three gentle ridges. The spout 484 is also off-center in Fig. 10B.

Viewed from the front of the cup (Fig. 10C), however, the cup is fully

symmetrical.

> The cup can have various sizes, as the specification reports:

>> The cap is also preferably interchangeable with numerous tumbler cups of different sizes. In this embodiment, the necks of the cups are all of the same diameter, although the cups themselves are of different volumes. For example, the same sized cap could be used on a 6 ½ oz. cup and/or a 7 oz. cup and/or a 9 oz. cup, and so forth.

A725; accord, A722-723.

> The ring 468 secures the lid portion 480 to the cup 491. The lid

includes two features, the more prominent of which is an upstanding spout. As

shown, the lid 480 has a broad, "pancake" lower portion that is beneath, and much

wider than, the upstanding spout.

### B.    The Spout Shape in the '106 Application

> The spout shape was the focus of the PTAB final decision. A007-008.

At least Figs. 10B and 10C show that the spout is broader at its bottom than at its

top. That is, the spout has some non-vertical slope(s).

> Also, at least Figs. 8-9 show that the circumference of the spout is

oval, as viewed from the top. The PTAB and Requesters use the term "racetrack"

shape without defining it. They characterize the shape of the spout as viewed from

above in the '465 design patent as an "oval" but they say that the spout in the parent '106 application has a "racetrack" shape. A007.

Racetracks exhibit a variety of shapes. One common understanding of this term connotes a closed geometric form having a pair of separated parallel lines joined by curved lines at opposite ends. In other words, a "racetrack" shape would have two "straightaways" connected by 180 degree turns at the ends of the straightaways, as the following images of race tracks (not in the record) depict:



Meadowlands racetrack (automotive)



Aqueduct racetrack (horse racing)

When examined, the top view of the spout as shown in Figure 9C of the '106 application, however, does not have any straightaways but instead is constantly curved.



**Parent '106 Application (A743), Fig 9C**

Indeed, the parent '106 application uniformly refers to the spout shape as "oval":

> The structures of the preferred embodiments of the upper valve of the invention are shown, for example, in Figures 3a and 6 with respect to the baby bottle nipple, and in Figures 8-9 and 11-12, with respect to the soft spout. The preferred construction of the upper valve of the nipple is similar to that of the spout. In the baby bottle nipple the tip is circular, however, whereas <u>in the soft spout the tip is oval</u>.

A704-05 [emphasis added]

> Sidewall 120 forms an [*sic*] tube down into the nipple, as shown for example in Figure 3d. In the preferred embodiment, this tube is symmetrical when viewed from the top. More specifically, in the preferred embodiment of the nipple, the tube is circular when viewed from the top; and <u>in the preferred embodiment of the spout, the tube is in the shape of an oval when viewed from the top</u>. Thus, the valve of the nipple preferably has an upper cylindrical section, and the valve of the spout preferably has an upper tubular section with an oval shape.

A709 [emphasis added]. Further:

> In the embodiment of the valve for the spout, a single slit is provided. However, <u>the spout is an oval</u>, presenting an elongated shape which is intended to be placed into the mouth in a particular orientation. In this orientation (which is the most comfortable position for the spout to sit in the mouth), the wider side of the <u>oval</u> rests down and the shorter side of the <u>oval</u> extends between the user's tongue and the roof of his or her mouth. Thus, in this position, the slit is oriented vertically in the proper position for use.

A710 [emphasis added]. In discussing Figs. 3, 6, and 7, along with the spout in

Figs. 8-12, the parent '106 application states as follows:

> Due to the fact that the spout is larger than the nipple and also of a different shape (i.e. <u>with an oval tip</u> as opposed to the round nipple tip), the appropriate thicknesses and dimensions of the individual parts of the spout have to be adjusted accordingly.

A713 [emphasis added]. Addressing Fig. 11 specifically, the '106 application

states:

> (For the soft spout it is 0.4040 inches in one direction (that shown in Detail D of Figure llc) and is

0.6240 in the other direction (that shown in Detail C of Figure 12c), the two directions being provided <u>since that embodiment is an oval</u>). The diameter of the flat surface segment 164 is 0.2000 inches. (It is 0.3393 inches in one direction (the direction of Detail C in Figure 12c) and 0.2101 inches in the other direction (the direction shown in Detail D of Figure 11e), for the embodiment in the soft spout, <u>since that embodiment is an oval</u>).

A714 at 27 [emphasis added]

The several top view drawings showing the spout in the '106 application are collected *infra* at 16-17 in connection with the discussion of Fig. 3 of the '465 design patent.

## C.    <u>The '465 Design Patent at Issue</u>

The drawings of the '465 design patent (A017-022) show *design* features that are contained in the '106 application but do not show the details of the no-spill valves. Figs. 1 and 2 of the design are shown in the following tables alongside some of the '106 application drawings:

**'106 Appln. Figs. 10B-C [Ex. 3001]
(rotated as necessary)**

**Figures 1-2 of D617,465
[Ex 1006]**





FIGURE 1





FIGURE 2

12

The '465 design patent places some of the features in broken line and explains at page 1 that "The broken lines in the figures illustrate portions of the drinking cup and form no part of the claimed design." A017.

Fig. 5 of the '465 design patent shows a rear view of the drinking cup. It corresponds to Fig. 12B of the '106 parent, as shown below. The cinched, ribbed waist is clearly shown. *See also* the side view (Fig. 10B) of the '106 parent, shown above. Again, some features (finger grips 497) are shown in broken lines:

| '106 Appln. Fig. 12B (rotated as necessary) | Fig. 5 of D617,465 |
| --- | --- |





Turning now to the top view, Fig. 3 of the '465 design patent is reproduced below. Labels have been added to help describe what is shown.



**FIGURE 3**

In general, this top view shows:

A.      a solid line (representing the outside of the screw-ring or other connection structure 468 of the parent)

B.      a solid line partially surrounding the screw ring (representing part of the vessel)

C.      an inside solid line (representing the lid 480 in the parent)

D.      an off-center spout (left of center) in Fig. 3

D2.    a middle oval associated with the spout tip

D3.    an outer oval associated with the spout

E.      an off-center vent (right of center in Fig. 3), and

F.      finger grips (in broken lines).

In deciding the priority issue, the PTAB noted the size of the spout in the top view and the fact that it shows two relatively close inner ovals and a larger oval which we have marked "D3," circumscribing the two smaller ovals.[1] One issue is whether the addition of oval D3 in the design patent is new matter or, as LNC contends, is supported in the patent application.

Fig. 3 does not show the slits in the spout or the vent, which represent the no-spill valves of the parent '106 application.

The following table shows the various top views of the spouts from the parent '106 application (A742-746):

---

[1] We refer extensively to oval "D3"in the Argument.

**Top View Figures of '106 Appln (Ex. 3001; A742-746)**



**Fig. 8A**



**Fig 8E**



**Fig 9C**



**Fig. 10A**

**Top View Figures of '106 Appln (Ex. 3001; A742-746)**



**Fig. 11A**

**Fig. 12A**

Fig. 4 of the '465 design patent shows a bottom view of the drinking cup. This includes a broken line portion in a central portion of the cup bottom. The '106 application does not include a bottom view but shows various side views. In '106 Fig. 10B and 10C, the bottom of the cup is shown as a solid horizontal line. But in Figs. 11B and 12B, the bottom has an upwardly curved central portion. The design patent places that central portion of the bottom of the cup in broken lines.



FIGURE 4

**D.    The Petition and Decision to Institute**

On December 5, 2012, Munchkin filed a Request for *Inter Partes* Review. A24. The request was accompanied by various cited art but no expert

declarations. At A029-032, Munchkin set forth hundreds or thousands of possible

combinations. A095. Munchkin argued beginning at A036 that the '465 design

patent design is not entitled to priority earlier than its actual filing date (October

31, 2007) and specifically is not entitled to the 2003 priority date of the parent '106

application.

Munchkin raised four specific assertions concerning entitlement to the

priority date. A039-043. These allegations were: (1) an inconsistent air vent hole

with a raised ridge; (2) an inconsistent slit line inside the vent; (3) an inconsistent

external spout configuration; and (4) an inconsistent internal spout configuration.

The remainder of the Request addressed obviousness.

LNC did not file a preliminary response.

On April 25, 2013, the PTAB entered a Decision to Institute IPR.

A091. It noted the challenge based on the '604 publication alone or the '225 patent

alone and, as to the additional cited art, explained that Munchkin is not entitled to

consideration of *all* of the numerous, multi-reference grounds. A095.

When discussing the effective filing date of the '465 design patent, the

PTAB reproduced *only* Figure 12a of the '106 application and declared:

> Figure 12a shows a top view of a spout, collar, and
> vessel although the vessel is barely visible. Figure 12a
> does not show the same design as that of the '465 Patent,
> as best viewed in Figure 3 *supra*. For example, the '106
> Application, which shows a racetrack-shaped spout tip,
> does not disclose the claimed oval-shaped spout tip of the

'465 Patent. Also, the '106 application, which shows slits
in the openings of the spout tip and vent, does not disclose
the broader design of the '465 patent, which lacks any
such slits.

For at least these reasons, possession of the claim to
design of the '465 patent is not shown as of the filing date
of the 106 application.

A097.  Thus the PTAB distinguished between a "racetrack" shape and an oval

shape.

The PTAB noted that the tip of the spout is concave, the collar has a

curved outer wall, the vessel includes an hourglass shape, and its midsection or

waist portion includes three horizontally-oriented shallow grooves that extend

around the sides and back of the vessel but not the front.  A101.

The PTAB ruled against Munchkin as to the functionality of the

vessel and collar. A102. Thus it denied that the design patent covers <u>only</u> the spout.

A102-03. The PTAB viewed the curved outer wall of the collar as ornamental,

decided that the three grooves are not purely functional, and noted that the

"curving line that circumnavigates the vessel dividing it into two regions . . . is

ornamental . . . ." A102.

Importantly, the PTAB also decided that Figure 10b of Hakim '604

and Figure 2 of the design patent show "<u>nearly</u> <u>identical</u>" [emphasis added]

drinking cups except that the '465 design patent disclaims some of the features in

broken lines. A103. Likewise, the PTAB found that Figure 1 of the design patent is

nearly identical with Figure 10c of the '604 publication. A104. The PTAB

determined that in the eye of an ordinary observer, these designs are so

substantially the same that they would induce one to purchase the drinking cup

embodying the design of Hakim '604, supposing it to be that of the challenged

claim. *Id*.

The PTAB reached the same findings with respect to the Hakim '225

patent. A105-06.

The PTAB was not persuaded that any of the proposed secondary

references disclose any ornamental feature of the claim better than Hakim '604 or

Hakim '225. A104-113. Thus the PTAB denied the petition as to all grounds

except for these two citations. *Id*.

### E.     LNC's Opposition to the Decision

LNC timely responded (A138-144) to the Decision to Institute and

filed a Motion to Amend the patent. A127.  LNC noted the priority issue and

referred to its Motion to Amend including amended drawings which, LNC

asserted, cured the continuity objections. A141-142. LNC noted that the '465

design patent is a continuation of the '106 application which was fully

incorporated by reference as part of the originally-filed specification. A139-140.

LNC explained that it overcame the "rejections" because the "present application is

entitled to the August 5, 2003 filing date of the '106 parent application." Hence, LNC requested withdrawal of the "rejections." A142.

LNC noted *inter alia* that the parent '106 application discloses in its written description that the spout tip can be oval shaped, citing col. 12, lines 45–51, A143, contemplating Exhibit 1013, A492-523, the relevant disclosure of which is contained in the parent '106 application. LNC noted that the '106 application states, "in the preferred embodiment of the spout, the tube is in the shape of an oval when viewed from the top.…" A143.

### F.    LNC's Motion to Amend the Claim

LNC's Motion to Amend (A127-136) included proposed replacement sheets for the design patent. Munchkin opposed the Motion on various bases. A152. LNC filed a reply. A183.

### G.    Munchkin's Reply to LNC's Response to the Decision to Institute

Munchkin replied to LNC's Response to the Decision to Institute. A164. The overwhelming majority of the reply addressed LNC's Motion to Amend.

### H.    The Final Written Decision

Following oral argument, the PTAB issued its Final Written Decision (A001-016), denying the '465 design patent the benefit of the priority date of its

own parent '106 application. A008. The PTAB compared Figure 12A of the parent

'106 application to Fig. 3 of the '465 design patent and generated the following

side-by-side images and legends (A007):



Fig. 3 of '465 patent
(rotated 90º counter-clockwise)

Fig. 12a of the '106 application

Importantly, (a) the PTAB did not discuss the impact of any other

figures from the parent '106 application, whether side, front, or top views, and (b)

the PTAB added the legend "**spout tip**" and pointed to the set of three ovals in the

design patent, including the oval we call D3 herein. The PTAB gave three reasons

for denying the earlier filing date:

1. The outer boundary of the spout tip of the claimed design is <u>larger</u> than that
   of the '106 application.

2. The spout tip of the claimed design has a different, more rounded oval shape
   than the racetrack shape of the spout tip in the '106 application.

3. The spout tip of the claimed design has <u>three</u> concentric rings, not all of which are disclosed in the '106 application.

A007. The PTAB acknowledged that the written portion of the '106 application specifies that the tube part of the spout is "in the shape of an oval when viewed from the top" but ruled that this passage "does not identify the specific shape of the spout in the claimed design or otherwise reasonably convey to those skilled in the art that the inventor had possession of the claimed design." A007-008.

As LNC did not argue that the design is nonobvious over Hakim '225 or Hakim '604, relying only on antedating these citations, the PTAB ruled that the '465 design patent is unpatentable over these references. A008. The PTAB also denied LNC's Motion to Amend. A008-115.  LNC timely appealed on June 16, 2014.

## SUMMARY OF ARGUMENT

The holding of invalidity of the claim of the '465 design patent should be vacated for any of three independent reasons.

First, as set forth in Argument II, *infra,* having announced the priority claim issues in its Decision to Institute at the beginning of trial, the PTAB acted improperly when it decided that issue on *different grounds*. This is simply unfair. In the Final Written Decision, the PTAB announced two wholly new reasons from what it had said were the issues in the Decision to Institute, and it gave a different

articulation of another issue.  This change of the issues was highly prejudicial to

LNC. The PTAB denied LNC <u>fair</u> <u>notice</u> of the issues to be litigated so it could

have offered appropriate evidence to support its case.

Second, as discussed in Argument III, *infra*, a plenary review shows

that Mr. Hakim *was* in possession of the claimed design invention when he filed

the parent '106 application. The PTAB misinterpreted the outer oval D3 as part of

the <u>tip</u> of the spout when it actually represents a slope change at the base of the

spout, not its tip. Oval (D3) is inherent and clearly understood from the remaining

drawings of the parent '106 application which show that the spout has a broader

base than its tip. That is what the third oval (D3) indicates to persons skilled in the

art.  Thus, the PTAB's three reasons for denying priority are contrary to the facts,

as explained below.

<u>Reason 1</u>: *The outer boundary of the spout tip is bigger than shown in*

*the parent.* The PTAB apparently interpreted oval D3 as part of the <u>tip</u> of the spout,

but it represents a slope change at the <u>base</u>, not the tip, of the spout. *Of course* D3

is larger than the tip oval D2 and the enclosed slightly smaller oval because the

base of the spout is *larger* than the tip of the spout. Oval D3 is there for that very

purpose. It is not new matter because the drawings of the '106 patent leave

absolutely no doubt that the spout has curved outer walls resulting in a wider spout

base than spout tip. As for whether the two interior ovals are bigger than shown in

the parent, the relative length of the major axis is *exactly* the same as shown in the parent '106 application. As for the minor axis of the oval, the parent shows a variety of relative widths, and the width shown in the design patent is *exactly* within the range shown in the parent.

Reason 2: *The spout tip of the claimed design has a different, more rounded oval shape than the racetrack shape of the spout tip in the '106 application.* The parent '106 application plainly shows and explicitly describes ovals. One of the figures of the parent shows an even broader oval. The oval in the design patent is within the range of ovals illustrated in the parent '106 application. This evidence shows that Mr. Hakim was in possession of these details of the claimed design.

Reason 3: *The spout tip of the claimed design has three concentric rings, not all of which are disclosed in the '106 application.* The explanation for Reason 1 also refutes Reason 3. Even though no third ring is illustrated in the top view drawings in the parent utility application, that third ring is inherent from considering the other figures that show that the spout widens as it approaches the pancake section. Viewed from above, there is a noticeable change in curvature where the spout meets the "pancake" section of the lid. That location is noticeably larger than the size of the spout tip. The third oval ring (D3) shows the widening, is not new matter, and is fully supported by the figures in the parent '106 application.

Finally, as discussed in Argument IV, *infra*, the PTAB failed to consider or apply the appropriate burden of proof with regard to its decision that the designed claimed by the '465 design patent lacks written description support from its parent '106 application. In particular, the PTAB did not articulate or otherwise address that as a basis for claiming unpatentability of the '465 design patent, lack of written description must be established by a petitioner in an *inter partes* proceeding, as mandated by 35 U.S.C. § 316(e). To meet this burden, Munchkin had to come forward with sufficient evidence demonstrating that a person of ordinary skill in the relevant art would find insufficient description for the claimed design. Accordingly, a necessary prerequisite for satisfying the burden of proof with regard to inadequate written description of the parent '106 application is establishing the level of ordinary skill in the art in 2003 when the parent '106 application was filed. The PTAB, however, neglected to recognize that Munchkin failed to present any evidence in this regard and instead merely relied on argument concerning purported differences between the figures of the '465 design patent and selected figures of the parent '106 application. Such oversight constitutes reversible error.

# ARGUMENT

## I.    The Standard of Review

Entitlement to priority under §120 is a matter of law and receives plenary review on appeal. *In re Daniels*, 144 F.3d 1452, 1455 (Fed. Cir. 1998).

During reexamination, "claims ... are to be given their broadest reasonable interpretation consistent with the specification, and ... claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004) (internal quotation marks and citation omitted). " '[C]laim construction by the PTO is a question of law that we review de novo....' " *Rambus Inc. v. Rea*, 731 F.3d 1248, 1252 (Fed. Cir. 2013) (quoting *In re Baker Hughes Inc.*, 215 F.3d 1297, 1301 (Fed. Cir. 2000)).

Obviousness under 35 U.S.C. § 103 is a legal conclusion based on underlying factual findings, including "[t]he scope and content of the prior art" and "whether the prior art teaches away from the claimed invention." *In re Mouttet*, 686 F.3d 1322, 1330 (Fed. Cir. 2012). The PTAB's factual findings are reviewed for substantial evidence, and questions of law are reviewed without deference. *Id.* at 1330–31.

Under the substantial evidence standard of review, this Court will not overturn the PTAB's decision if a reasonable mind might accept the evidence as

adequate to support a conclusion. *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

## II.    The PTAB Announced One Set of Issues for Trial and then Decided the Case on Other Issues, Denying LNC Notice and the Opportunity to Present Material Evidence on the Other Issues

LNC was obliged to rely on the statement of issues for trial announced by the PTAB in its initial decision. When the PTAB decided the case on *other* issues, after the evidence was mustered, this was fundamentally unfair to LNC because, among other things, LNC had no opportunity to provide evidence on these other issues. This procedural error mandates vacating the decision and remanding the case to the PTAB for retrial.

### A.    U.S. Law Demands Fundamental Fairness and an Opportunity to Present Evidence

American jurisprudence embodies the concept of fair play and avoiding unfair surprise. Cases explaining that there was or was not unfair surprise are legion, and they span the entire jurisprudence. For example, in the context of rulemaking, the Supreme Court admonishes against unfair surprise:

> To defer to the agency's interpretation in this circumstance would seriously undermine the principle that agencies should provide regulated parties "fair warning of the conduct [a regulation] prohibits or requires." [citation omitted] Indeed, it would result in precisely the kind of "unfair surprise" against which our cases have long warned. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170–171, 127 S.Ct. 2339, 168

> L.Ed.2d 54 (2007) (deferring to new interpretation that
> "create[d] no unfair surprise" because agency had
> proceeded through notice-and-comment rulemaking);
> *Martin v. Occupational Safety and Health Review
> Comm'n*, 499 U.S. 144, 158, 111 S.Ct. 1171, 113 L.Ed.2d
> 117 (1991) (identifying "adequacy of notice to regulated
> parties" as one factor relevant to the reasonableness of
> the agency's interpretation); *NLRB v. Bell Aerospace Co.*,
> 416 U.S. 267, 295, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)
> (suggesting that an agency should not change an
> interpretation in an adjudicative proceeding where doing
> so would impose "new liability ... on individuals for past
> actions which were taken in good-faith reliance on
> [agency] pronouncements" or in a case involving "fines
> or damages").

*Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2166-67 (2012). Unfair

surprise is inimical to our justice system, and provisions are taken to avoid it. *Old

Chief v. U.S.,* 519 U.S. 172, 181, 117 S.Ct. 644, 182 (1997) (regarding certain

exclusions of evidence); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345,

353, 103 S.Ct. 2392, 2397 (1983) (no potential for unfair surprise in tolling statute

of limitations); *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445,

454, 102 S.Ct. 1162, 1167-68 (1982); *Therasense, Inc. v. Becton, Dickinson and

Co.,* 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) citing *Lonchar v. Thomas*, 517 U.S.

314, 323, 116 S.Ct. 1293, 1299 (1996) (equitable rules that guide lower courts

reduce uncertainty, avoid unfair surprise, etc.).

Fairness also demands that parties be given a reasonable opportunity

to present evidence. E.g., *Hall v. Florida,* --U.S.--, 134 S.Ct. 1986 (2014)

(reversing Florida Supreme Court to give Mr. Hall opportunity to present evidence

of disability); *Boumediene v. Bush,* 553 U.S. 723, 128 S.Ct. 2229 (2008) (review

proceeding under Detainee Treatment Act falls short of being constitutionally

adequate, as detainee would have no opportunity to present evidence discovered

after CSRT proceedings concluded); *Macklin v. Butler,* 553 F.3d 525 (7th Cir.

1977).

    With specific regard to administrative procedures, "Two constitutional

amendments, the Fifth and Fourteenth, assure that both federal and state agencies

must accord due process to individuals affected by agency action. The Fifth

Amendment commands the federal government that 'No person shall be . . .

deprived of life, liberty, or property, without due process of law . . . .'" Wright,

*Federal Practice and Procedure, Judicial Review of Administrative Action* § 8126,

Vol. 32, p. 51 (citing U.S. Constitution, Amendment 5). "[T]he Constitution

requires only that such government action must be the result of adequate

procedures." *Id.* "Proof of 'abuse of power' is not necessary in order to sustain a

procedural due process action. The right to procedural due process is based on the

existence of a due process interest, life, liberty or property. Procedural due process

requirements only apply to government actions which threaten a deprivation of one

of these interests." Wright, § 8127, Vol. 32, p. 56 (citing *Miller v. Lorain County*

*Bd. of Elections,* 141 F.3d 252, 259 (6th Cir. 1998), *Martin v. Memorial Hosp. at*

*Gulfport,* 130 F.3d 1143, 1147 (5th Cir. 1997), and *Neal v. Shimoda,* 131 F.3d 818, 827 (9th Cir. 1997)).

"Fairness or fair procedure permeates the language of administrative law . . . [and] expresses a special concern for those individuals especially affected by the government action." Wright, § 8112, Vol. 32, p. 5.

"Notice is a basic requirement." *Id.*, pp. 349-50 (*citing e.g.*, Administrative Procedure Act, 5 U.S.C. § 554(b) ("[W]hen private persons are the moving parties, other parties to the proceeding shall give prompt notice of issues controverted in fact or law; and in other instances agencies may by rule require responsive pleading."), *General Electric Co. v. U.S. EPA*, 53 F.3d 1324, 1328 – 1329 (D.C. Cir. 1995) (The requirement of adequate notice "has now been thoroughly incorporated into administrative law." The agency's interpretation is entitled to deference, but if it wishes to use that interpretation to cut off a party's rights, it must give full notice of its interpretation.) (Internal citations and quotation marks omitted), *Satellite Broadcasting Co. v. FCC*, 824 F.2d 1, 4 (D.C. Cir. 1987), *Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991) (adequacy of the notice necessarily depends on the circumstances of the particular adjudicative process)).

"It has long been established that due process requires notice reasonably calculated, under all circumstances, to inform the private party of the

nature of the government action so as to allow an opportunity to challenge the action." Wright, § 8222, Vol. 32, pp. 350-51 (citing *e.g.*, *General Electric Co. v. U.S. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995) ("Fair notice" includes clear expression of the regulations involved.), *Simons v. City of Grand Forks*, 935 F.2d 981, 983 (8th Cir. 1993) (Due process requires notice of the adverse contentions and access to the evidence in order to assure an adequate opportunity to participate.), *Yellow Freight System, Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992) ("To satisfy the requirements of due process, an administrative agency must give the party charged a clear statement of the theory on which the agency will proceed with the case")).

"Fairness also requires that the notice be given sufficiently prior to the adjudication so as to allow the party to adequately participate." Wright, § 8222, Vol. 32, pp. 351-52 (citing e.g., *Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799, 807 (4th Cir. 1998) (The notice must afford a reasonable time in which to respond.)).

**B.**    **The PTAB Declares the Issues for Trial When It Decides to Institute Trial**

Litigation at the PTAB is conducted according to the provisions of the Leahy-Smith America Invents Act (Publ. L. 112-29, 125 Stat.284 (2011)), the PTO rules adopted pursuant thereto, and the further operating procedures and mandates

specified by the Trial Practice Guide, 77 Fed. Reg. 48755–48773 (August 14, 2012). The Trial Practice Guide includes the following relevant excerpt:

> *General Overview of Proceedings:*
>
> Generally, the proceedings begin with the filing of a petition that identifies all of the claims challenged and the grounds and supporting evidence on a claim-by-claim basis. Within three months of notification of a filing date, the patent owner in an IPR, PGR, or CBM proceeding may file a preliminary response to the petition, including a simple statement that the patent owner elects not to respond to the petition. The Board acting on behalf of the Director will determine whether to institute a trial within three months of the date the patent owner's preliminary response was due or was filed, whichever is first. <u>In instituting a trial, the Board will narrow the issues for final decision</u> by authorizing the trial to proceed only on the challenged claims for which the threshold standards for the proceeding have been met. Further, the Board will identify, on a claim-by-claim basis, the grounds on which the trial will proceed. <u>Any</u> claim or <u>issue not included in the authorization for review will not be part of the trial</u>. A party dissatisfied with the Board's determination to institute a trial may request rehearing as to points believed to have been overlooked or misapprehended. See § 42.71(d) and (c).[2]
>
> ***
>
> *3. Content of Decision on Whether To Institute:* In instituting a trial, the Board will <u>streamline the issues</u> for final decision by authorizing the trial to proceed only on the challenged claims for which the threshold standards for the proceeding have been met. Further, <u>the Board will identify, on a claim-by-claim basis, the grounds on which</u>

---

[2] 77 Fed. Reg. 48755, 48757 [emphasis added].

> the trial will proceed. Any claim or issue not included in
> the authorization for review is not part of the trial.[3]

The PTAB is required by statute to complete its trials within 12

months,[4] extendible by only six months in exceptional situations. The PTAB takes

this into consideration when it decides whether to declare a trial and which issues

to include. Thus the Trial Practice Guide also states:

> The Board, in determining whether to institute, may take
> into account whether the review could be completed
> timely. For example, the Board may decline to institute a
> proceeding where the Board determines that it could not
> complete the proceeding timely. [5]

In federal district court proceedings, the pleadings typically frame the

issues for trial. But an administrative "trial" before the PTAB is different. While

there are pleadings in the form of a petition and a voluntary patent owner response,

the PTAB *selects* issues from these pleadings at the outset (in the decision to

institute) to be tried in a time-constrained proceeding. Any other issues not

pronounced in the Decision to Institute are "not part of the trial."  When the PTAB

submits its initial decision on the petition for IPR or other review, it narrows the

issues for trial, and the parties then proceed to litigate those issues only. Other

---

[3] *Id.* at 48765.
[4] 35 U.S.C. §316(a)(11), see also §316(b).
[5] 77 Fed. Reg. 48755, 48757 [emphasis added].

issues are "not part of the trial." That initial decision, therefore, provides notice to the parties of the only issues for trial.

### C.    LNC Was Denied Timely Notice of Certain Issues Which the PTAB Relied On in its Final Written Decision

In its Decision to Institute, the PTAB selected the issues for trial in this case. In particular, the issues announced by the PTAB specifically concerned *racetrack shapes* and *slits*:

1. The shape of the spout tip: the '106 application shows a <u>racetrack-shaped</u> spout tip and not an <u>oval</u>-shaped one.

2. The '106 application shows <u>slits</u> in the openings of the spout tip and vent and does not disclose the broader design of the '465 design patent, which lacks any such slits.

A097.

However, in the Final Written Decision, the PTAB adopted two wholly new other reasons and revised the "oval" argument. Thus, its reasons were:

1. The <u>outer boundary</u> of the spout tip is <u>bigger</u> in the design patent.

2. The spout tip is <u>more rounded</u> in the design patent.

3. The design patent has a <u>third concentric ring</u> in the spout tip drawing.

A007.

This change of issues unfairly prejudiced LNC. It should have had fair notice of the issues to be litigated so it could have offered appropriate evidence to support its case. At least issues 1 and 3 were new issues stated by the PTAB. Issue 1 concerns the <u>size</u> of the spout, and issue 3 concerns a ring in the drawing.  Issue 2 is arguably a restatement of the racetrack shape issue.

LNC deserves the opportunity to address the new issues raised belatedly by the PTAB. For example, LNC could have provided evidence by way of testimony on the issue of the size of the outer tip of the spout.  Also, it could have provided evidence regarding the third ring (D3).  But without knowing that the PTAB would include these issues for trial, LNC had no reason to pursue these two issues because they were "not part of the trial."

## III.    **The Inventor Was In Possession of the Design Invention as of the Filing Date of the Parent '106 Application**

### A.    **Legal Standards for Design Patent Assertions of Priority**

This Court has addressed the priority claims in design patents on several occasions. It is clear that the test for priority is not necessarily whether the drawings are identical but whether the earlier application provides evidence in drawings or written disclosure that the inventor was in possession of the invention now claimed, at that earlier time.

*In re Salmon*, 705 F.2d 1579 (Fed. Cir. 1983) ruled that a design patent for a stool could not be reissued to assert that it is a continuation-in-part of

an earlier, co-pending application because the second application showed a stool with a *round* seat whereas the earlier design patent application showed a stool using the same legs but with a *square* seat. The seat was a substantial portion of the overall design, although the novelty largely resided in the unique shape of the tubular legs as shown below (from Des. 234,101 at issue in that case):



In sustaining the PTAB's rejection of the claim for priority, this Court framed the issue as whether the stool design claimed in the second application was the same design *disclosed* in the parent '106 application. This Court referred repeatedly to what was *disclosed* in the parent '106 application, considering *both* the text *and* the drawings of the earlier application:

> Insofar as here pertinent, these two provisions together require that for section 120 to apply, the first application must disclose "the invention" claimed in the second application. [citations omitted]. With respect to the design patent involved in this case, those provisions require that the stool design claimed in the second application must be the same design <u>disclosed</u> in the parent '106 application.

The Board held, and we think correctly, that the design for a stool with a round seat was not <u>disclosed</u> in the parent '106 application:

> [T]he <u>disclosure</u> in the parent '106 application does not <u>suggest</u> a seat member of any other configuration, and thus does not describe a stool where the seat member has a round configuration.... [T]he alternative of a round seat is not <u>found in the disclosure</u> in the parent '106 application.

> The parent '106 application <u>disclosed</u> only a stool with a square seat, not one with a round seat. The parent '106 application claimed "an original design for a Stool as shown." The stool as shown in the drawings was depicted in three-dimensional sketches that showed a square seat. Similarly, the specification in the application described figure 1 in the drawings as "a general perspective view of the front of a stool embodying our new design."

> Nothing in the text of the application or the attached drawings even intimated that the square shape of the seat was not an integral element of "our new design" for a stool. Nothing in the application indicated that the design for which a patent was sought was anything less than the stool "as shown." Neither <u>the text of the application</u> nor the drawings even suggested that the design consisted of only the tubular portion of the stool and not the seat.

*Id.* at 1581 [emphasis added].

*In re Salmon* involved one design application claiming priority to an earlier <u>design</u> application (which contains almost no textual description). The case supports LNC because, as explained *infra*, the text of parent utility application in combination with the drawings specifically supports the oval-shaped design in the

design patent application. Indeed, the drawings of the parent '106 application show a curved spout top without straightaways and show the other features in the '465 design patent. LNC's position is completely consistent with and supported by *In re Salmon*.

The question of whether a design patent can have the filing date of a *utility* patent application was addressed by this Court in 1989. In *Racing Strollers, Inc. v. TRI Industries, Inc.*, 878 F.2d 1418 (Fed. Cir. 1989), this Court ruled *en banc* that a design patent filed as a division of an application for a utility patent could take the priority date of its parent '106 application. The facts of the case were similar to the case at bar because of intervening art through the patent owner itself, namely, a product sale more than one year before the filing date of the application for the design patent. In the case at bar, the art of interest is the publication of the parent utility patent application. In *Racing Strollers*, as here, the inventor countered with a claim that it was entitled to the filing date of the parent '106 application, which would overcome the bar. 878 F.2d at 1418-19. Judge Rich, writing for the Court, noted:

> As a practical matter, meeting the remaining requirements of §112 is, in the case of an ornamental design, simply a question of whether the earlier application contains illustrations, <u>whatever form they may take</u>, depicting the ornamental design illustrated in the later application and claimed therein by the prescribed formal claim …

*Id*. at 1420 (emphasis added).

Addressing the question under 35 U.S.C. §120 as to whether the design application is entitled to the benefit of an earlier application, the Court overruled the earlier decision of *In re Campbell*, 41 CCPA 896, 212 F.2d 606, cert. denied, 348 U.S. 858 (1954). The Court faulted the Patent Office for "a process of reasoning which exploits the trivial and ignores that which is vital and important." *Id*. at 1421. The Court emphasized that any applicant complying with the terms of §120 has the right to the benefit of the filing date of the earlier application. Thus, "where the conditions of 35 U.S.C. §120 are met, a design application may be considered a continuing application of an earlier utility application."

This *en banc* precedent is clear authority pointing us to the question of whether the earlier application contains illustrations, *in whatever form they may take*, disclosing the later-claimed design.

*In re Daniels*, 144 F.3d 1452 (Fed. Cir. 1998), is the famous leaf design case where the Board determined that a design patent application was not entitled to the benefit of an earlier design application (and the subject matter of the later application was unpatentable over an intervening publication). Daniels' first design patent application for a leech trap application included drawings showing the leecher decorated with a pattern of leaves. Later, Daniels filed a continuation design application *without* the leaf pattern. The Board denied Daniels the benefit of the parent '106 application, holding that the second application shows a new and

different design, a design is "a unitary thing," and the change in the drawings

defeats compliance with the written description requirement. 144 F.3d at 1455.





**First Application**                    **Second Application**

This Court explained at the outset, "Entitlement to priority under §120

is a matter of law, and receives plenary review on appeal." *Id*. at 1455.  The

criterion to be met is whether the later claimed subject matter is described in the

earlier application in compliance with §112, first paragraph. *Id*. at 1456.  The test

for sufficiency under §112 (written description) is the same whether the application

is for a design or a utility patent.  *Id*.

One way that courts have expressed this test is "whether the

disclosure of the application relied upon 'reasonably conveys to the artisan that the

inventor had possession at that time of the later claimed subject matter.'"  *Id*.

Further,

> In general, precedent establishes that although the applicant "does not have to describe exactly the subject matter claimed, … the description must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed." *In re Gosteli*, 872 F.2d at 1012 …

*Id*.

The court noted that when a §120 priority issue arises, one looks at the drawings of the earlier application for disclosure of the later-claimed subject matter but, again, "the inquiry is simply to determine whether the inventor had possession at the earlier date of what was claimed at the later date."

The *Daniels* court ruled that the leaf design was "a mere indicium that does not override the underlying design," *id*. at 1457, and the subject matter of the later application was common to that of the earlier application. Thus, "the Board was incorrect in holding that any change in the design defeats a priority claim as a matter of law." *Id.* Hence, deleting a line or ornamental embellishment does not automatically defeat a priority claim. Under the correct law, Mr. Daniels possessed the invention claimed in the continuing application and was entitled to claim priority under §120 to the parent '106 application.

*In re Owens*, 710 F.3d 1362 (Fed. Cir. 2013) can be harmonized with *Daniels*. The court reaffirmed the longstanding rule that the test for sufficiency of the written description (whether for a design patent or a utility patent) concerns whether the disclosure of the application relied upon reasonably conveys to

persons skilled in the art that the inventor had possession of the claimed subject matter as of that earlier filing date.  *Id.* at 1366.  In *Owens*, both the parent '106 application and the later application were design applications.  In the second application, the inventor inserted a broken line and a new facet on the decorative bottle design. Because the earlier patent was a design patent, the drawings themselves provided the written description of the invention, and the court noted that *usually* in design applications there is no description other than the drawings. *Id*.  The court noted, however, that the parties themselves agreed that a design patentee under certain circumstances could introduce by amendment a straight broken line without adding new matter even where no corresponding boundary line is shown in a design application as originally filed, citing MPEP §1503.02.  *Id*. The question resolved in *Owens* involved adding matter that was previously not disclosed anywhere in the parent '106 application. Hence *Owens* is distinguishable from the facts presented in the present case.

## B.    An Inventor May Conform the Drawings to Other Drawings or a Written Description

Munchkin argued below that the '465 design patent drawings are not exactly the same as drawings in the parent '106 application, wherefore the design patent includes new matter and cannot claim the filing date of the parent '106 application.

However, patent applicants have the right to change their drawings without violating the new matter prohibition when they conform the drawings to what had been previously disclosed, *i.e.*, where the originally-filed application disclosed what is being added. This Court's predecessor held that an addition to a drawing was not new matter because of sufficient teaching in the original patent application. *Creed v. Potts*, 25 CCPA 1084, 1089-92, 96 F.2d 317, 321-23 (CCPA 1938) (addition of second pin to figure was not new matter because it was obviously needed for operability). See also, *Hobbs v. Beach,* 180 U.S. 383, 395 (1901) (permitting correction of drawing via reissue).

Further, *In re Benno*, 768 F.2d 1340, 1346 (Fed. Cir. 1985) noted that amendments to the specification, including the claims and the drawings, are proper when they conform to at least one of them as it existed at the time of filing the application.[6]

Courts have repeatedly allowed changes on the basis of what earlier drawings show. See, e.g., *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1565 (Fed.

---

[6] Numerous other cases explain that an inventor does not add new matter by conforming the drawings to what is set forth in the written disclosure, or vice-versa. E.g., *Fletcher v. U.S.,* 201 Ct. Cl. 698, 478 F.2d 1380, 1384 (U.S. Court of Claims 1973) ("textual matter is not 'new matter' within the meaning of 35 U.S.C. § 132, since it simply makes explicit in the patent in suit what was explicit in the cross-referenced copending application"); *Kolmes v. World Fibers Corp.,* 107 F.3d 1534, 1539 (Fed. Cir. 1997) ("Claims to subject matter disclosed in the specification are not new matter"); *General Electric v. Cooper Hewitt,* 249 F. 61 (6th Cir. 1918) citing *Hobbs v. Beach,* 180 U.S. 383, 395 (1901) (permitting correction of drawing via reissue).

Cir. 1991) (supporting disclosure may be in drawings); *In re Skvorecz,* 580 F.3d 1262, 1269-70 (Fed. Cir. 2009) (Figs. 12-13 are partial disclosures showing offsets, etc.); *Sanders Brine Shrimp Co. v. Bonneville*, 970 F.Supp. 892, 901 (D. Utah 1997) (relying on drawing to reject new matter contention).

### C.   The '465 Design Patent is Entitled to the Priority Date of the Parent '106 Application

The PTAB ruled that the '465 design patent is not entitled to the 2003 filing date of its parent '106 application.  This ruling receives plenary review on appeal. *Daniels,* 144 F.3d at 1455.  The issue of law is whether the inventor was in possession of the subject matter claimed in the design patent as of the filing date of the earlier utility patent application.

### 1.   The parent utility application shows the major design aspects shown in the design patent drawings

The PTAB reproduced the five figures from the design patent when it first introduced the design patent in its Final Written Decision. A004. The PTAB had previously stated that the front and side views were <u>nearly</u> <u>identical</u> and were so close that the infringement test was satisfied. A104, 106.

The Supreme Court has ruled squarely, and this Court follows the rule, that whatever infringes, if later, anticipates if earlier.  *Miller v. Eagle Mfg. Co*., 151 U.S. 186, 14 S.Ct. 310 (1894) (citing *Peters v. Active Manufacturing Co.*, 129 U.S. 530, 9. S Ct. 389 (1889) and other Supreme Court authority).  If the

earlier application as published were an anticipation, how could priority to it be denied?

Admittedly, we are dealing with an obviousness rejection and not an anticipation rejection. However, the point is that the PTAB has already determined that the major features are shown. Specifically, the side view and the front view of the '465 design patent show the dominant features of the design of a bottle with curved ridges in a cinched waist portion, a decorative cape that wraps around the back and extends down the front of the bottle over a major surface area, a gently sloped profile of the front wall (as seen in Fig. 2) that is different in profile than the rear (see the right side of Fig. 2), a sloped collar sitting above the cape, a spout above the collar sloping gently upward at first and then ascending more quickly (see Fig. 1), having a concave portion at the top (See Fig. 2), and having a vent hole in the lid (see Figs. 2 and 5). There is no issue about the bottom view (Fig. 4). All of these design features are totally in common with the parent '106 application to such an extent that the PTAB called the front and side views "nearly identical" in the Decision to Institute.

2.    The top view issues

On the priority issue, the only examination by the PTAB appears to have been with respect to the top views. The PTAB compared Figure 12A of the

parent '106 application to Fig. 3 of the '465 design patent and generated the

following side-by-side images (A007):



Fig. 3 of '465 patent
(rotated 90° counter-clockwise)

Fig. 12a of the '106 application

Importantly, (a) the PTAB did not consider the impact of any other

figures from the '106 application, whether side, front, or top views, and (b) the

PTAB added the legend "**spout tip**" and pointed to the set of three ovals in the

design patent, including the oval we call D3.

Based on this narrow vision, the PTAB gave three reasons for denying

the earlier filing date. All of them relate to aspects of the design patent spout that

the PTAB failed to find in Fig. 12A of the parent '106 application:

1.  the outer boundary of the spout tip in the claimed design is <u>larger</u>

    <u>than</u> in the '106 application (not previously mentioned in the

    Decision to Institute Trial),

2. the spout tip has a <u>more rounded</u>, <u>oval shape</u> than the "racetrack" of the spout tip in the '106 application, and

3. the spout tip has <u>three</u> concentric rings while the '106 application shows only two (also not previously suggested in the Decision to Institute Trial).

A007.

First, these criticisms of the spout tip as seen in the top view by no means change the overall appearance of the ornamental design reflected in the drawings.

Second, all of these alleged defects are easily explained by considering the other figures and construing the patent claim. The PTAB incorrectly analyzed the drawing and closed its eyes to what is actually disclosed in the remaining parts of the parent '106 application, looking *only* at Fig. 12A of that application. A007.

### 3.    Claim construction of the '465 design patent

The PTAB adopted an unwarranted interpretation of the '465 design patent claim when it looked at Fig. 12A in isolation. However, the entire patent is to be considered, for "the person of ordinary skill in the art is deemed to read the claim term … in the context of the entire patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*).  Likewise, the whole patent description is

important, and "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316. With respect to design patents, a court must construe the claim by referring to all of the drawings. *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002):

> ''It has been consistently held for many years that it is the appearance of a design as a whole which is controlling in determining questions of … infringement.'' *In re Rubinfield,* 47 C.C.P.A. 701, 270 F.2d 391, 395, … (CCPA 1959). Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement. This is because ''[a] patented design is defined by the drawings in the patent, not just by one feature of the claimed design.'' *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450… (Fed.Cir.1993).

See also *Arminak and Assoc., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314 (Fed. Cir. 2007).

When applied to the case at bar, this means that the PTAB should not have construed the spout shape feature with reference to the top view alone. Instead, it should have consulted the other relevant drawings. By failing to consider the other views, the PTAB came to the wrong conclusion that the third oval D3 is part of the spout <u>tip</u>. The drawings as a whole unmistakably lead the ordinarily skilled person in the art to the understanding that oval D3 represents a slope change at the base of the spout.

From the PTAB's erroneous claim interpretation, several erroneous conclusions followed. The next section *infra* explains how the claim should be construed when considering whether the parent '106 application shows possession of the design invention as of the filing date of the parent '106 application.

    4.    <u>Under the proper claim interpretation, the parent '106 application shows that the inventor was already in possession of the third ring (D3) shown in Fig. 3 of the design patent</u>

The explanation for the existence of the third oval ring (D3) also accounts for why the ring appears larger than the outer (second) ring in the parent '106 application.  It would be challenging to explain this by looking only at Fig. 12a <u>in isolation</u>, which the PTAB apparently did, without referring to the other drawings of the parent's disclosure, which the PTAB apparently ignored.

Looking at the parent '106 drawings, Fig. 1 shows a baby nipple where the tip is not convex outward but instead becomes concave and re-enters the nipple. A730. This re-entry portion has an inside wall.  The top of the nipple has an an outside edge.  Those are two edges. Additionally, it can be seen in Fig. 1(a) and many other figures that the baby nipple expands as it descends downward.  If one were to draw a top view of this, one would see a pair of concentric circles representing the two edges at the top of the nipple, surrounded by a third, outer, contour line which would represent one of the points of curvature closer to the

bottom of the nipple.  In fact, that is exactly what Fig. 1(b) shows.  The same is true of Figs. 2, 3, 4, 5 and 6. A731-738.



Figures 7 – 12 of the parent '106 application represent embodiments of the drinking apparatus using a spout instead of a nipple. A742-746. Holding in abeyance the question of whether the opening for the spout at the tip is racetrack-shaped or oval (egg-shaped), it is plain to see from Fig. 8C and 8D of the parent '106 application that the spout (the upstanding part) rises somewhat like a chimney.  It is not, however, completely vertical but instead slopes upward from a "pancake" bottom.  These figures are reproduced below, but broken lines and labels have been added to explain these three ovals:



If one were to draw a plan view of the lid and include a contour line representing the sloped base of the spout where it meets the "pancake" portion of the lid 468, that would be an outermost third ring (D3) that is bigger than the two ovals representing the two surfaces at the tip of the spout. It is plainly shown in Fig. 8C and 8D that the spout is wider at its base than at its peak. It has slope to it.

Likewise, Figures 9(a) and 9(b) of the parent '106 application show sectional views through the spout. Both figures show an inside, substantially vertical wall inside the spout tip. A short distance outward from the tip is an outside wall of the spout. Proceeding further down the sloped spout, one arrives at the "pancake" base level which is outward from the peak. This slope is easily seen in Figs. 9(a) and 9(b) as shown below (A743):



**Parent Appln, Fig. 9(a)**          **Parent Appln, Fig. 9(b)**

The remaining drawings of the parent '106 application are completely consistent with this understanding. Fig. 11C presents a close up sectional view of



the tip of one spout. A745. One can see two surfaces at the top of the spout to be shown in a top view. Also note that the spout slopes outward as it descends. In a top view, a contour

line indicating this outward expansion would be <u>outward</u> from lines depicting the

surfaces at the tip of the spout.  A design patent draftsman would indicate this

contour. Oval D3 is clearly associated with this outward expansion and the change

in slope at the base of the spout.

Likewise, Figure 12C (A746) of the parent '106 application is

completely consistent with this understanding:



.027 REF

.052 REF

.028 REF

DETAIL  C

FIG. 12C

Accordingly, while LNC admits that a third surrounding oval (D3) has

been added to '465 design patent Fig. 3 that was not included in the top view of

Fig. 12A of the parent '106 application, it is beyond doubt from inspecting other

figures of the '106 application that oval D3 is <u>not</u> <u>new</u> <u>matter</u> but instead is

completely and consistently supported by the original disclosure of the '106 utility

patent application.  The patent draftsman was simply adding a line (D3) to improve

the clarity of the disclosed structure.  He was making it <u>consistent</u> <u>with</u> <u>the</u> <u>other</u>

<u>views,</u> as abundant case law justifies.

Moreover, the parent '106 application was not a design application, so when filing the design application, the inventor needed to comply with the special requirements for design patent drawings. One of those calls for showing the "character or contour of surfaces represented." [7]  To comply with this requirement, the inventor added the third line (D3) in the plan view representing the slope change where the spout transitions to the pancake portion of the lid. Since that line does not appear as an edge in Figs. 1-2, one must conclude that it is a character or contour line.

_____

[7] 37 C.F.R. 1.152, 65 Fed. Reg. 54674, Sept. 8, 2000 provides:

> Design drawings. The design must be represented by a drawing that complies with the requirements of § 1.84 and must contain a sufficient number of views to constitute a complete disclosure of the appearance of the design. Appropriate and adequate surface shading should be used to show the character or contour of the surfaces represented. Solid black surface shading is not permitted except when used to represent the color black as well as color contrast. Broken lines may be used to show visible environmental structure, but may not be used to show hidden planes and surfaces that cannot be seen through opaque materials. Alternate positions of a design component, illustrated by full and broken lines in the same view are not permitted in a design drawing. Photographs and ink drawings are not permitted to be combined as formal drawings in one application. Photographs submitted in lieu of ink drawings in design patent applications must not disclose environmental structure but must be limited to the design claimed for the article. [emphasis added]

Such lines have been used to indicate a change in direction of slope or curvature. For example, in *Chef'n Corp. v. Trudeau Corp.,* 2009 WL 1564229 (W.D. Wash. June 4, 2009) the court considered Design Patent 556,503 containing the following figures (and others) for a steamer design:



**Figure 1, US D556,503**



**Figure 2, US D556,503**

The court accepted the interpretation that the circular solid lines inward of the top rim depict changes in curvature or slope of a surface. *Id.* at *4.

   5.   The third concentric ring (D3) is necessarily larger but the spout tip is not larger than shown in the parent '106 application

In its decision, the PTAB said, "as viewed from the top, (1) the outer boundary of the spout tip of the claimed design is larger than that of the '106 application." A007. The PTAB did not indicate whether it was considering the third oval (D3) as a contour line near the spout base or, alternatively, a surface at the free end of the spout.

The proper interpretation of the design figures is that the third oval (D3) is a character or contour line. This is clear because none of the other drawings in the design patent show a specific edge at that location. The reason that the third ring (D3) is larger is self-evident. The spout *increases* in size as it approaches the "pancake" section of the lid. The spout is broader at the bottom than at the top. As such, a contour line showing a location of a change in slope between the spout and that pancake section would *necessarily* be larger than the two (narrower) ovals derived from the top of the spout. Hence the third oval (D3) is larger than the ovals shown in the parent '106 application (Ex. 3001) – which represent only the surfaces at the spout tip.

Further addressing the oval sizes, in the design patent, the middle interior ring (D2) has the same relative length as the second ring shown in the parent '106 application. This line represents an outside wall of the spout at the tip. Looking at Fig. 3 of the '465 design patent, the major axis of the middle oval (D2) measures 34 percent of the length of a line bisecting that oval and extending from the next ring out (which represents the inside of the attachment ring marked "C" on page 14, *ante*). That line measures 41 millimeters in length as printed in the patent. The length of the middle oval is 14 millimeters, which equates to 34% of the 41 millimeters. Exactly the same 34% length ratio is occupied by the corresponding rings in Fig. 9C of the parent '106 application. For convenience, an enlarged view of that figure appears *infra* at 62. The axis referred to is the vertical broken line in that figure.

As for the relative width of the oval (the minor axis), in Fig. 3 of the design patent, the measurements are 9 mm for the spout oval and 41 mm for ring (C), equating to 22%. Turning to the parent ''106 application, in Fig. 8E the comparable measurement is 25%. In Fig. 8A it is about 17.5%. In Fig. 9C it is about 19%. In Fig. 11A it is about 15%. Accordingly, in the '465 design patent, the size of the minor axis of the spout tip relative to the inside lid dimension is well within the illustrated range in the '106 application.

6.    The inventor was in possession of the shape of the "oval"

Munchkin asserted below that the spout tips shown in the parent '106 application have a "racetrack" shape without quite defining what a "racetrack shape" really is. They distinguished that from the "oval" shape in Fig. 3 for the spout. The PTAB used the same terminology of "racetrack" shape for the parent '106 application and "oval" or "egg-shaped" for the three concentric rings in Fig. 3 of the '465 design patent. The PTAB concluded that the oval (egg) shape is not shown in the parent '106 application.

The proper test, however, is not confined to what is shown in the drawings of the parent '106 application or Fig. 12A in isolation but *whether the inventor possessed the claimed subject matter as of the filing date of the parent '106 application*. The Statement of Facts *supra* quotes several statements in the specification proclaiming uniformly that the shape of the spout is "oval." *Ante* at 9-11. Not once does the parent '106 application say that the shape of the spout must resemble a racetrack or have straightaways.

Moreover, a careful look at the top views of the parent '106 application shows that generally, the spout does not have "straightaways." Starting with Fig. 8 (A742) of the '106 application, the following enlarged Fig. 8A shows

that the circumference of the spout is constantly curved.  Anyone can see that <u>it</u> <u>does</u> <u>not</u> <u>have</u> <u>straightaways</u>:



Oval spout circumference

**Parent '106 application, Figure 8A detail, enlarged (A742)**

Fig. 8B shows the same thing in a perspective view.  It shows unmistakably that the spout tip is curved, without a straightaway:



Curved outside circumference and curved inside wall

**Parent '106 application (Ex. 3001),  Figure 8B**

Fig. 8E of the '106 application is another top view that shows curvature all around the circumference of the spout.



Figure 9C also clearly shows a constantly curved oval circumference of the spout, without any straightaways, *i.e.*, not a "racetrack" shape:



**Parent '106 application (Ex. 3001),  Figure 9C detail, enlarged (A743)**

Moreover, when considering Figs. 8-12 of the '106 application in light of the <u>explicit</u> <u>statement</u> in the written description portion that <u>the spout tip is oval</u>, one would <u>not</u> arrive at the conclusion that the shape of the spout viewed in Fig. 3

of the design patent constitutes new matter.  Instead, the conclusion to be drawn is that Mr. Hakim was plainly in possession of the constantly curved oval circumference of the upstanding spout.  These are completely consistent and demonstrate his possession of this invention as of the filing date of the parent '106 application.

Munchkin provided utterly no expert testimony contradicting this evidence, even though it bore the burden of proving that the claim is not patentable. See Argument IV, *infra.* It may point to other figures and argue that it sees no oval *there*, but to no avail. Munchkin has to prove that this shape is not disclosed *anywhere.* If the parent '106 application contains a disclosure *anywhere* of the design invention, that is enough to claim the filing date of the parent '106 application.

7.    Conclusion concerning the spout

The PTAB misconstrued the design drawings, particularly with respect to oval D3. LNC has shown that contrary to the specific decision at page 7 of the Final Written Decision, the spout tip is <u>not</u> larger than that of the '106 application.  The two inner ovals representing the top (tip) of the spout are generally the same size as depicted in the several '106 drawings for the spout embodiments.  The relative length of the oval tip (major axis) is exactly the same as one of the '106 application figures, and the relative width of the oval tip (minor

axis) is clearly within the range of the several figures of the parent '106

application. The outer oval D3 is larger than oval D2 because oval D3 represents a

slope change of the spout where it merges with what we have called, for the sake

of explanation, a "pancake" section of the lid.  Oval D3 represents a much different

location on the spout than oval D2 represents.

Second, it is <u>not</u> true that the spout tip has a more rounded oval shape

than the parent '106 application discloses.  It is also not true that all of the

drawings shown in the parent '106 application include straightaways.  To the

extent that there is any variation, it is explained by the numerous statements in the

written description that this shape is indeed oval.

Finally, the question of the third concentric ring (D3) which is not

drawn in the '106 application has been explained.  That third oval in fact is

<u>inherently</u> contained in the drawings of the parent '106 application.

Accordingly, all three of the specific reasons cited by the PTAB to

deny the benefit of the parent '106 application filing date to the design patent are

clearly erroneous.  None is supported by substantial evidence. And in any event,

this is a question of law that receives <u>plenary</u> review.

The PTAB improperly confined its focus on a fairly minute detail

compared to the overall appearance of the ornamentation of this utilitarian drinking

cup. Even then, the PTAB focused on one drawing only instead of all the drawings and the written disclosure.

### 8.    The "raised rim" is not an issue for this appeal

Munchkin argued below that the '106 drawings show a raised rim around the circular vent 500 and that the '465 design patent drawings, while showing the circular vent, do not show a raised rim.

First, the PTAB did not rely on that argument in denying the priority date.  Accordingly, the raised rim question is not an issue and need not be considered now.

Second, if it were an issue, even though several of the drawings of the parent '106 application show two concentric circles at the vent, Fig. 8E (see below) shows a single line defining the vent. A742. This shows possession of the single line design invention when Mr. Hakim filed the '106 application.



**IV.   The PTAB Failed to Hold Munchkin to Its Burden Of Proof for Establishing Inadequate Written Description in the Parent '106 Application**

According to the patent statute, "[i]n an *inter partes* review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence." 35 U.S.C. § 316(e). Although this Court has not yet addressed the question regarding the burden for establishing unpatentability in an *inter partes* review under 35 U.S.C. § 316(e), that statute is clear on its face that such burden rests with the party challenging the validity of the patent.  This is fully consistent with the burden of proof in a patent interference proceeding, where, as here, unpatentability is claimed on the basis of inadequate written description set forth in a priority application.  See *Kubota v. Shirbuya*, 999 F.2d 517, 522 (Fed. Cir. 1993).

In this case, the PTAB concluded that the '465 design patent claim was invalid because it was not entitled to a priority date of its parent '106 application and was therefore obvious over the parent '106 application as published and over LNC's own later-issued patent.  In rendering this decision, the PTAB relied merely on Munchkin's argument that certain features of the design claimed by the '465 design patent appear different from how they were originally disclosed in (some figures of) the parent '106 application. (See Final Decision, A006-008).  Such argument is not sufficient to meet a petitioner's burden of proof.

The test for satisfying the written description requirement is "whether the disclosure of the application relied upon reasonably conveys *to those skilled in the art* that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (emphasis added) (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)).  This standard is an objective inquiry "*from the perspective of a person of ordinary skill in the art*."  *Id.* (emphasis added).  Thus, "[d]etermining whether the written description requirement has been met involves examining what an ordinarily skilled artisan would have known at the time the patent was filed." *Scanner Technologies Corp. v. Icos Vision Systems Corp.*, N.V.,  253 F.Supp.2d 624, 633 (S.D.N.Y  2003)(citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003).

Here, Munchkin failed to establish sufficiently that a person of ordinary skill in the art, reading the '106 application at the time it was filed, would not have understood that the inventor at that time had possession of the invention claimed by the '465 design patent.  Indeed, during the PTAB proceeding, Munchkin failed to present any expert opinion by way of testimony or declaration, or other extrinsic evidence, tending to establish the level of ordinary skill relative to the teachings of the '106 application or how one of ordinary skill would have construed such teachings.  Instead, the only evidence relied upon by Munchkin was

the actual patent, alleged "prior art," and attorney argument concerning alleged differences between the drawings.

Such evidence is insufficient to invalidate LNC's patent.  See *SIPCO, LLC v. Abb, Inc*., 2012 WL 3112302, *41 (E.D. Tex. 2012) (conclusory argument was insufficient to prove that a person of ordinary skill would find insufficient description for claimed subject matter); *Irise v. Axure Software Solutions, Inc*., 2009 WL 3615075 (C. D. Cal. Sept. 11, 2009) (cursory references to the patent specification are insufficient to support a claim of inadequate written description); See also *Chemcast Corp. v. Arco Industries Corp.*, 913 F.2d 923, 926-927 (Fed. Cir. 1990) ("[o]f necessity, the disclosure required by section 112 is directed to those skilled in the art" and therefore "one <u>must</u> consider the level of skill in the relevant art" in determining a § 112 question) (emphasis added); *Star Scientific Inc. v. R.J. Reynolds Tobacco Co*., 2004 WL 5683181, *5 (D. Md. Jan. 27, 2004) (a patent challenge under § 112 must fail where the challenger fails to put forth evidence of the level of skill in the art).  Accordingly, contrary to 35 U.S.C. § 316(e), the PTAB erred by finding that Munchkin satisfied its burden to show that the claim of the '465 design patent is not supported by any disclosure in the parent '106 application in the manner required by 35 U.S.C. § 112, ¶1 (now 112(a)).

# CONCLUSION

LNC requests this Court to reverse the decision of the PTAB and hold that the Hakim '465 design patent claim cannot be obvious over Hakim '604 or Hakim '225 for the reason that the '465 design patent is entitled to the filing date of the parent '106 application.

In the alternative, LNC requests this Court to vacate the Final Written Decision and remand the case to the PTAB for retrial for either of two reasons. First, LNC was unfairly surprised and prejudiced by the PTAB's adoption of new issues in its Final Written Decision as to which LNC had insufficient notice to provide expert testimony or other evidence bearing on the new issues. Second, the PTAB failed to apply the appropriate burden of proof with regard to its decision that the invention claimed by the '465 design patent lacks written description support from the parent '106 application.  In particular, the PTAB failed to recognize that Munchkin did not present evidence as to the level of ordinary skill in the relevant art at the time the '106 application was filed. That is a necessary requirement.

Respectfully submitted,

/s/ Edward D. Manzo
Edward D. Manzo, *Principal Counsel*
*for Appellant, Luv N' Care, Ltd.*
George S. Pavlik
Daniel Kim
HUSCH BLACKWELL LLP

120 S. Riverside Plaza, Suite 2200
Chicago, Illinois  60606
Telephone:  312-655-1500

Hartwell P. Morse, III
Luv n' care, Ltd.
3030 Aurora Avenue
Monroe, Louisiana  71201
Telephone:  318-338-3108
*Counsel for Appellant*
*Luv N' Care, Ltd.*

# ADDENDUM

Trials@uspto.gov                                              Paper No. 28
571-272-7822                                      Entered:  April 21, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

MUNCHKIN, INC. AND TOYS "R" US, INC.
Petitioners

v.

LUV N' CARE, LTD.
Patent Owner
————————

Case IPR2013-00072
Patent D617,465
————————

Before JENNIFER S. BISK, BENJAMIN D. M. WOOD, and
MICHAEL J. FITZPATRICK, *Administrative Patent Judges.*

FITZPATRICK, *Administrative Patent Judge.*


FINAL WRITTEN DECISION
*35 U.S.C. § 318 and 37 C.F.R. § 42.73*

Case IPR2013-00072
Patent D617,465

# I.   BACKGROUND

Munchkin, Inc. and Toys "R" Us, Inc. (collectively, "Petitioner") filed

a petition (Paper 3, "Pet.") requesting an *inter partes* review of the sole

claim of U.S. Patent D617,465 (Ex. 1002, "the '465 patent").  Patent Owner,

Luv N' Care, Ltd., did not file a preliminary response.  In an April 25, 2013,

Decision to Institute (Paper 8, "Dec. on Pet."), we granted the petition and

instituted trial of the patent claim on the following grounds:  (1) as obvious

over US 2007/0221604 A1, published September 27, 2007 (Ex. 1006,

"Hakim '604"); and (2) as obvious over US 6,994,225 B2, issued February

7, 2006 (Ex. 1013, "Hakim '225").  Dec. on Pet. 23.

After institution, Patent Owner filed a response (Paper 14, "PO

Resp."), and Petitioner filed a reply (Paper 18, "Pet. Reply").  Additionally,

Patent Owner filed a motion to amend the claim (Paper 13, "Mot."),

Petitioner filed an opposition (Paper 17, "Pet. Opp."), and Patent Owner

filed a reply (Paper 19, "PO Reply").  Oral hearing was held on January 22,

2014.[1]

The Board has jurisdiction under 35 U.S.C. § 6(c).  This final written

Decision, issued pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73,

addresses issues and arguments raised during the trial.  Issues and arguments

raised prior to institution of trial, but not made during trial, are not addressed

necessarily in this Decision.

As discussed below, Petitioner has shown by a preponderance of the

evidence that the sole claim of the '465 patent is unpatentable, and Patent

Owner has not met its burden of proof on the motion to amend.

---

[1] A transcript of the oral hearing is included in the record.  Paper 26, "Tr."

2

Case IPR2013-00072
Patent D617,465

A.      Related Proceedings

The following district court cases concerning the '465 patent have been identified by one or more of the parties:  (1) *Luv N' Care, Ltd. v. Toys "R" Us, Inc.*, 1:12-cv-00228 (S.D.N.Y. filed Jan. 11, 2012); (2)  *Luv N' Care, Ltd. v. Regent Baby Products Corp.*, 10-9492 (S.D.N.Y. filed Dec. 21, 2010); and (3) *Luv N' Care, Ltd. v. Royal King Infant Prod's Co. Ltd.*, 10-cv-00461 (E.D. Tex. filed Nov. 4, 2010).  Paper 6, 2; Pet. 2.

Petitioner additionally identifies an *inter partes* reexamination of related U.S. Patent D634,439 bearing control no. 95/001,973.  Pet. 2.

B.      The '465 Patent (Ex. 1002)

The challenged '465 patent is titled "Drinking Cup," issued on June 8, 2010, names Nouri E. Hakim as inventor, and is assigned to Patent Owner. Ex. 1002, 1.  The claim of the '465 patent recites "the ornamental design for a drinking cup, as shown and described."  *Id*.; *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (stating that "design patents 'typically are claimed as shown in drawings'") (quoting *Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007)).  The '465 patent includes five figures, reproduced below.

3

Case IPR2013-00072
Patent D617,465



FIGURE 1          FIGURE 2          FIGURE 5

FIGURE 3          FIGURE 4

Figures 1-5 show front, right, top, bottom, and back views,
respectively, of a drinking cup having a vessel, collar, and spout.  Ex. 1002,
1.  The "DESCRIPTION" of the '465 patent identifies these five views, and

4

states that "[t]he broken lines in the figures illustrate portions of the drinking cup and form no part of the claimed design."[2] *Id.*; *see also In re Owens*, 710 F.3d 1362, 1367 n.1 (Fed. Cir. 2013) ("[I]t is appropriate to disclaim certain design elements using broken lines, provided the application makes clear what has been claimed.").

## II.    TRIAL OF THE ISSUED CLAIM

In instituting trial, we determined that there was a reasonable likelihood that the claim of the '465 patent would have been obvious over each of Hakim '225 and Hakim '604.  Dec. on Pet. 23.  In response, Patent Owner does not argue that the claim is patentably distinct from those references.  PO Resp. 6-7; Tr. 31:10-17.  Rather, Patent Owner argues that the references are not prior art.  PO Resp. 6-7; Tr. 31:10-17.

Hakim '225 issued February 7, 2006, and Hakim '604 was published September 27, 2007.  Ex. 1013, 1; Ex. 1006, 1.  The '465 patent issued from U.S. Application serial no. 29/292,909 ("the '909 application"), which was not filed until October 31, 2007.  Ex. 1002, 1.  However, the '909 application was filed as a continuation of U.S. Application serial no. 10/536,106 ("the '106 application"), which is the national stage of PCT Patent Application PCT/US2003/024400, filed August 5, 2003.[3]  Ex. 1002, 1; Ex. 1006, 1.  Patent Owner argues that the claim of the '465 patent is

---

[2] As shown in the figures, the broken lines are directed to a central portion of the bottom surface of the vessel, two series of five grooved ribs on the sides of the collar, and two notches adjacent to the top of the collar and bottom of the spout.  Ex. 1002, Figs. 1-5.

[3] Hakim '604 (Ex. 1006) is a publication of the '106 application (Ex. 3001).

5

Case IPR2013-00072
Patent D617,465

entitled to an effective filing date of August 5, 2003, thereby disqualifying

Hakim '225 and Hakim '604 as prior art. PO Resp. 5-7.

To be entitled to a parent's effective filing date under 35 U.S.C.

§ 120, a continuation must comply with the written description requirement.[4]

*Owens*, 710 F.3d at 1366.

> The test for sufficiency of the written description, which is the
> same for either a design or a utility patent, has been expressed
> as "whether the disclosure of the application relied upon
> reasonably conveys to those skilled in the art that the inventor
> had possession of the claimed subject matter as of the filing
> date."

*Id.* (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351

(Fed. Cir. 2010) (en banc)).

> In the context of design patents, the drawings provide the
> written description of the invention. Thus, when an issue of
> priority arises under § 120 in the context of design patent
> prosecution, one looks to the drawings of the earlier application
> for disclosure of the subject matter claimed in the later
> application.

*Owens*, 710 F.3d at 1366 (citations omitted).

Petitioner argues that the '106 application lacks written description

support for the claim of the '465 patent. Pet. 13-18. Petitioner's argument is

based, in part, on differences between the spout of the claimed design and

the spout described and shown in the '106 application. Pet. 16-18. Figure 3

of the '465 patent and Figure 12a of the '106 application are reproduced

below, side-by-side, with an annotation and with Figure 3 being rotated 90°

---

[4] The written description requirement, which is now found at 35 U.S.C.
§ 112(a), was codified previously at 35 U.S.C. § 112, ¶ 1 (1975).

6

Case IPR2013-00072
Patent D617,465

counter-clockwise to align with Figure 12a.



| Fig. 3 of '465 patent (rotated 90° counter-clockwise) | Fig. 12a of the '106 application |

Figure 3 of the '465 patent and Figure 12a of the '106 application each illustrate a top view of a drinking cup having a spout, collar, and vessel, the vessels being barely visible. As can be seen, the claimed design of the '465 patent includes a spout tip that is different than that disclosed in the '106 application. Specifically, and as viewed from the top, (1) the outer boundary of the spout tip of the claimed design is larger than that of the '106 application; (2) the spout tip of the claimed design has a different, more rounded, oval shape than that of the racetrack shape of the spout tip in the '106 application; and (3) the spout tip of the claimed design has three concentric rings that the '106 application does not disclose.

Patent Owner argues that the '106 application provides an adequate written description, based on the following disclosure:

> [I]n the preferred embodiment of the spout, the tube is in the shape of an oval when viewed from the top. Thus, the valve of the nipple preferably has an upper cylindrical section, and the valve of the spout preferably has an upper tubular section with an oval shape. Alternately, another shape may be provided if desired.

7

Case IPR2013-00072
Patent D617,465

PO Resp. 6; Ex. 3001, 21.[5]  Although this excerpt from the '106 application

discloses that an oval or other shape may be used for the spout, it does not

identify the specific shape of the spout in the claimed design or otherwise

reasonably convey to those skilled in the art that the inventor had possession

of the claimed design.  *See Ariad Pharms.*, 598 F.3d at 1351.

For the foregoing reasons, the claim of the '465 patent is not entitled

to the benefit of the filing date of the '106 application.  Accordingly, Hakim

'225 and Hakim '604 are prior art to the claim of the '465 patent, which

would have been obvious over either reference.  *See* Dec. on Pet. 13-16; *see*

*also* PO Resp. 6-7 (not arguing the claim is patentably distinct over Hakim

'225 or Hakim '604); Tr. 31:10-17 (counsel for Patent Owner conceding that

the claim is not patentable if it is denied the benefit of the filing date of the

'106 application).

### III.    MOTION TO AMEND

During an *inter partes* review, a patent owner may file a motion to

amend the patent.  35 U.S.C. § 316(d).  The proposed amendment must be

responsive to a ground of unpatentabilty at issue in the trial.  37 C.F.R.

§ 42.121(a)(2)(i).  Additionally, it may not enlarge the scope of the claim(s)

or introduce new subject matter.  *Id*. at § 42.121(a)(2)(ii); *see also* 35 U.S.C.

§ 316(d)(3) (An amendment in an *inter partes* review "may not enlarge the

scope of the claims of the patent or introduce new matter.").  A patent owner

bears the burden to establish that it is entitled to the relief requested by its

motion to amend.  37 C.F.R. § 42.20(c).

---

[5] Patent Owner erroneously cites to Hakim '225, but the '106 application, as
filed, also includes the relied-upon quote.  *Compare* Ex. 1013, 12:45-51 *with*
Ex. 3001, 21.

8

Case IPR2013-00072
Patent D617,465

A.    The Proposed Amendment

Patent Owner proposes to amend the claim of the '465 patent by amending the five drawings to which the claim refers.  Mot. 2.  Patent Owner includes the proposed replacement drawings in Ex. 2001.  *See* Mot. 2 (referring to Exhibit 1 [sic, 2001]).  Patent Owner also includes the replacement drawings in its motion, each juxtaposed with a corresponding drawing of the issued patent, as reproduced below, including Patent Owner's captions.

 


**'465 Patent – Fig. 1**          **Fig. 1 Proposed Amendment**

9

Case IPR2013-00072
Patent D617,465





'465 Patent – Fig. 2                Fig. 2 Proposed Amendment





'465 Patent – Fig. 3                Fig. 3 Proposed Amendment





'465 Patent – Fig. 4                Fig. 4 Proposed Amendment

10

Case IPR2013-00072
Patent D617,465



'465 Patent – Fig. 5          Fig. 5 Proposed Amendment

Mot. 2-4. Figures 1-5 of the issued patent and Figures 1-5 of the proposed amendment, reproduced above, side-by-side, show clearly the proposed change in claim scope, as required by 37 C.F.R. § 42.121(b).

B.    Responsiveness to a Ground of Unpatentability

We instituted trial based on Hakim '225 and Hakim '604. Dec. on Pet. 23. In doing so, we made an initial determination that the claim of the '465 patent was not entitled, under 35 U.S.C. § 120, to the benefit of the filing date of the parent '106 application because the claim was not adequately described therein pursuant to 35 U.S.C. § 112(a). *Id.* at 6-8. The motion to amend seeks to amend the claim such that it would be supported by the disclosure of the '106 application, in order to disqualify Hakim '225 and Hakim '604 as prior art. Mot. 10. As such, the proposed amendment is

11

Case IPR2013-00072
Patent D617,465

responsive to a ground of unpatentability at issue in the trial, as required by
37 C.F.R. § 42.121(a)(2)(i).

Petitioner contends that the motion to amend includes one change that
is not responsive to a ground of unpatentability at issue in the trial. Pet.
Opp. 2-3. In particular, Petitioner contends that Patent Owner has sought to
amend the claim, not only via the replacement drawings, but also by
changing the language of the claim from "the ornamental design for a
drinking cup, as shown and described" to "the ornamental design for a
drinking cup as shown." *Id*. at 2 (referring to Ex. 2002). However, that
contention is based on a misapprehension by Petitioner that Patent Owner's
Exhibit 2002 is part of the proposed amendment. It is not. *See* Mot. 2
(stating that Exhibit 1 [sic, 2001] contains the amendments), 6 (stating that
Exhibit 2 [sic, 2002] is the '909 application as originally filed).

C.    Enlargement of Claim Scope

Petitioner contends that the proposed amended claim violates the
prohibition on enlargement of claim scope in an *inter partes* review. *See*
35 U.S.C. § 316(d)(3); 37 C.F.R. § 42.121(a)(2)(ii). Petitioner's contention
that the amendment would broaden the claim scope is based, in part, on
differences between the spout tip of the issued claim and that of the
proposed amended claim. Pet. Opp. 5-7. Those differences can be seen best
in a side-by-side comparison of Figure 3 of the '465 patent with the
corresponding replacement drawing of the proposed amended claim, as
reproduced below from page 3 of the motion to amend, including Patent
Owner's captions.

12

Case IPR2013-00072
Patent D617,465





'465 Patent – Fig. 3             Fig. 3 Proposed Amendment

Figure 3 of the issued claim and Figure 3 of the proposed amended claim illustrate top views of the respective drinking cup designs. The spout tip (left of center in each drawing above) is egg-shaped in the issued claim, whereas it is racetrack-shaped in the proposed amended claim. Additionally, the spout tip of the issued claim includes three concentric rings, whereas that of the proposed amended claim includes only two concentric rings.

Petitioner's contention that the amendment would broaden the claim scope is based also on differences in the vent (right of center in each drawing above). Pet. Opp. 5-7. The slit that is present in the proposed amended claim is formed of a broken line. Thus, it is not part of the claim. However, another difference exists, which affects the scope of the claim. Specifically, the vent of the issued claim consists of a single circle, whereas the vent in the proposed amended claim includes two concentric rings, which are meant to signify that a raised rim has been added around the air vent. Mot. 6.

Infringement of a design patent is based on the design "as a whole," and does not require all "points of novelty" in the claimed design being present in the accused device. *Egyptian Goddess*, 543 F.3d at 677-78; *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1363 (Fed. Cir. 2013). Patent

13

Owner relies on this distinction, between infringement of design patents and that of utility patents, to argue that the proposed amended claim is not broader than the issued claim because, to "an ordinary observer," the designs are "*substantially* the same." PO Reply 4 (emphasis added). However, Patent Owner does not direct us to, and we are not aware of, any authority that has applied the "ordinary observer" test—first enunciated as a test for infringement in *Gorham Manufacturing Co. v. White*, 81 U.S. 511 (1871) and adopted as the sole test for design patent infringement in *Egyptian Goddess*, 543 F.3d at 678—to compare the scope of two claims.

The scope of the issued claim and the proposed amended claim are defined by the respective drawings. *See id.* at 679 (design patents typically are claimed as shown in the drawings). Those drawings differ with respect to the spout tip and the vent. Specifically, the proposed amended claim is broader than the issued claim because it is broader with respect to racetrack-shaped spout tips and raised rim vents, even though it may be narrower with respect to egg-shaped spout tips and vents without raised rims. *See In re Rogoff*, 261 F.2d 601, 603 (CCPA 1958) ("[A] claim is broadened if it is broader in any respect than the original claim, even though it may be narrowed in other respects."). In other words, a drinking cup, having the racetrack-shaped spout tip and raised rim vent of the proposed amended claim, could infringe the proposed amended claim based on its overall design, yet not infringe the issued claim. *See Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 692 (Fed. Cir. 1997) ("A new claim enlarges if it includes within its scope any subject matter that would not have infringed the original patent."). Therefore, the proposed amended claim would

14

Case IPR2013-00072
Patent D617,465

enlarge the claimed subject matter in violation of 35 U.S.C. § 316(d)(3) and 37 C.F.R. § 42.121(a)(2)(ii).

## IV.    CONCLUSION

Petitioner has demonstrated by a preponderance of the evidence that the sole claim of the '465 patent is unpatentable under 35 U.S.C. § 103 as obvious over Hakim '225 and over Hakim '604.

Patent Owner's motion to amend is denied because it seeks to enlarge the scope of the claim.

## V.    ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the claim of the '465 patent is held *unpatentable*;

FURTHER ORDERED that Patent Owner's motion to amend the claim of the '465 patent is *denied*; and

FURTHER ORDERED that, because this is a final decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

15

Case IPR2013-00072
Patent D617,465

PETITIONER:

A. Poplin
Hissan Anis
LATHROP & GAGE LLP
JPoplin@LathropGage.com
hanis@lathropgage.com

Dane Baltich
ALSTON & BIRD LLP
dane.baltich@alston.com

PATENT OWNER:

Morris Cohen
Lee A. Goldberg
GOLDBERG COHEN LLP
mcohen@goldbergcohen.com
lgoldberg@goldbergcohen.com

# United States Court of Appeals
## for the Federal Circuit

*Luv N' Care Ltd v. Munchkin, Inc.,* No. 2014-1653

## <u>CERTIFICATE OF SERVICE</u>

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by HUSCH BLACKWELL LLP, Attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **September 12, 2014,** counsel has authorized me to electronically file the foregoing **Brief of the Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

R. Cameron Garrison (Principal Counsel)
Travis W. McCallon
Lathrop & Gage, LC
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108
816-292-2000
cgarrison@lathropgage.com
tmccallon@lathropgage.com

Allen J. Poplin
Lathrop & Gage, LLP
10851 Mastin Boulevard
Suite 1000
Overland Park, KS 66210
913-451-5100
Jpoplin@lathropgage.com

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

September 12, 2014                    /s/Robyn Cocho_____
                                     Robyn Cocho
                                     Counsel Press

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as modified by Fed. Cir. R. 32(b) because the portion of the brief counted in the type-volume limitation contains 13,339 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman font.

/s/ Edward D. Manzo
Edward D. Manzo
Husch Blackwell LLP
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Telephone: 312-655-1500
Facsimile: 312-655-1501
edward.manzo@huschblackwell.com

*Counsel for Patent Owner-Appellant*