**2014-1653**

# United States Court of Appeals for the Federal Circuit

LUV N' CARE, LTD.,

*Appellant,*

v.

MUNCHKIN, INC.,

*Appellee.*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-0072, Administrative Patent Judges Fitzpatrick, Bisk and Wood.*

## BRIEF OF APPELLEE

R. Cameron Garrison – Principal Counsel
Travis W. McCallon
LATHROP & GAGE LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64105
Phone: 816.292.2000
Email: rgarrison@lathropgage.com
       tmccallon@lathropgage.com

A. Justin Poplin
LATHROP & GAGE LLP
10851 Mastin Blvd. Bldg. 82 Suite 1000
Overland Park, KS 66210-1669
Phone: 913.451.5100
Email: jpoplin@lathropgage.com

*Attorneys for Appellee, Munchkin, Inc.*

November 10, 2014

# CERTIFICATE OF INTEREST

Counsel for Appellee certifies the following:

1.    The full names of every party represented by the undersigned counsel in this case are: Munchkin, Inc.

2.    Munchkin, Inc. is the name of the real party in interest.

3.    Munchkin, Inc. has no parent companies, and no publicly held corporation owns 10% or more of the stock of Munchkin, Inc.

4.    The names of the law firms and the partners and associates that have appeared for Munchkin, Inc. below or that are expected to appear in this Court are: R. Cameron Garrison, Travis W. McCallon, and A. Justin Poplin, all of Lathrop & Gage LLP.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ........................................................................i

TABLE OF AUTHORITIES ...........................................................................iv

STATEMENT OF RELATED CASES ............................................................ vii

STATEMENT OF THE ISSUES.....................................................................1

STATEMENT OF FACTS ..............................................................................2

   A.  The '465 Patent and the admittedly invalidating prior art ....................2

   B.  Before the PTAB, LNC focused on amending the '465 Patent, and
made little effort to establish a right to an earlier filing date in the
absence of amendment....................................................................5

SUMMARY OF THE ARGUMENT ...............................................................10

ARGUMENT ...............................................................................................12

   A.  This court reviews legal findings *de novo* and reviews factual findings
for "substantial evidence" ...............................................................12

   B.  The PTAB gave LNC adequate notice on the issue of priority, but
LNC failed to come forward with evidence .......................................14

      1.  LNC had the burden of coming forward with evidence of
entitlement to an earlier filing date.............................................14

      2.  LNC did not come forward with sufficient evidence of entitlement
to priority.................................................................................17

      3.  The PTAB gave LNC sufficient notice on the issue of priority, in
any event.................................................................................19

   C.  There is no basis to disturb the PTAB's finding that the '465 Patent is
not entitled to the benefit of the filing date of the '106 Application................25

      1.  The PTAB's denial of priority on the basis of the third concentric
ring (differences (1) and (3)) is correct and not subject to reversal ..........26

a.  LNC's new claim construction argument on appeal is improper..........26

b.  LNC's claim construction argument on appeal is non-sensical, in any event................................................................................32

c.  The '106 Application does not disclose the third concentric ring under any construction.................................................................37

2.  The PTAB's denial of priority on the basis of the shape of the spout tip (difference (2)) is correct and not subject to reversal...................42

3.  There are several additional grounds for affirming the PTAB's conclusion on priority ..........................................................47

D.  LNC had the burden of coming forward with evidence of the level of ordinary skill, though a finding on the issue was not necessary ......................51

CONCLUSION ...................................................................................53

CERTIFICATE OF SERVICE ...............................................................55

CERTIFICATE OF COMPLIANCE.........................................................56

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Amkor Technology, Inc. v. ITC,*
   692 F.3d 1250 (Fed. Cir. 2012) ...............................................................13

*Ariad Pharm., Inc. v. Eli Lilly & Co.,*
   598 F.3d 1336 (Fed. Cir.2010) ...............................................................13

*Chef'n Corp. v. Trudeau Corp.,* No. C08-1135,
   2009 WL 1564229 (W.D. Wash. June 4, 2009) ......................................... 32, 33

*Chore-Time Equipment, Inc. v. Cumberland Corp.,*
   713 F.2d 774 (Fed. Cir. 1983) ........................................................ 52, 53

*Conoco, Inc. v. Energy & Envtl. Intl., L.C.,*
   460 F.3d 1349 (Fed. Cir. 2006) ...............................................................30

*Dickinson v. Zurko,*
   527 U.S. 150 (1999) ..................................................................... 13, 14

*In re Chaganti,*
   554 Fed. Appx. 917 (Fed. Cir. Jan. 27, 2014) ....................................................53

*In re Daniels,*
   144 F.3d 1452 (Fed. Cir. 1998) ...................................................... 12, 13

*In re Hedges,*
   783 F.2d 1038 (Fed. Cir. 1986) ...............................................................23

*In re Jolley,*
   308 F.3d 1317 (Fed. Cir. 2002) ...............................................................14

*In re Owens,*
   710 F.3d 1362 (Fed. Cir. 2013) ............................................... 13, 14,  49

*Interactive Gift Express, Inc. v. Compuserve Inc.,*
   256 F.3d 1323 (Fed. Cir. 2001) ...............................................................24

*Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*,
  755 F.2d 158 (Fed. Cir. 1985) ...............................................................52

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed.Cir.2005) ...............................................................31

*Okajima v. Bourdeau*,
  261 F.3d 1350 (Fed. Cir. 2001) .............................................................52

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ............................................... 15, 16, 17

*Racing Strollers, Inc. v. TRI Industries, Inc.*,
  878 F.2d 1418 (Fed. Cir. 1989) ............................................... 44, 45, 46

*Rexnord Industries, LLC v. Kappos*,
  705 F.3d 1347 (Fed. Cir. 2013) .............................................................47

*Solvay S.A. v. Honeywell Intl. Inc.*,
  742 F.3d 998 (Fed. Cir. 2014) ...............................................................31

*Technology Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) ......................................... 15, 16, 17, 18

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*,
  418 F.3d 1326 (Fed. Cir. 2005) .............................................................24

## Statutes, Rules and Regulations

5 U.S.C. § 706 ..................................................................................14

35 U.S.C. § 102(b) ...........................................................................16

35 U.S.C. § 103 .......................................................................... 4, 10

35 U.S.C. § 112 ................................................... 13, 37, 44, 45

35 U.S.C. § 120 ........................................................................ 12, 13

35 U.S.C. § 171 ................................................................................45

35 U.S.C. § 316 (a) ..................................................................... 24, 25

35 U.S.C. § 316 (e) ...........................................................................15

37 C.F.R. § 1.152 ............................................................................32

37 C.F.R. § 42.104(b)(1), (2). ........................................................22

37 C.F.R. § 42.108(a)......................................................................22

37 C.F.R. § 42.108(c).......................................................................22


## Other Authorities

Trial Prac. Guide, 77 Fed. Reg. 48756, 48765 (Aug. 14, 2012).............................22

MPEP § 1503.02 .............................................................................37

## STATEMENT OF RELATED CASES

U.S. Patent No. D617,465 is at issue in the action entitled *Luv 'N Care, Ltd. et al. v. Toys "R" Us, Inc. et al.*, 1:12-cv-00228 (S.D.N.Y. filed Jan. 11, 2012), which is currently stayed pending final resolution of the *inter partes* review of the '465 Patent at issue here, as well as the resolution of a pending *inter partes* reexamination (Control No. 95/001,973) of related U.S. Patent No. D634,439.

# STATEMENT OF THE ISSUES

1.    In its decision instituting *inter partes* review of Luv 'N Care's U.S. Patent No. D617,465, the Patent Trial and Appeal Board expressly identified and addressed the priority issue that Munchkin had raised in its petition: "that [the patent's parent application] does not provide written description support for the claim of the '465 Patent."   In doing so, it further identified the specific figures pertinent to its finding on this issue, and it later relied upon these same figures in ruling upon the issue in its Final Decision.  Did the Patent Trial and Appeal Board provide Luv 'N Care with adequate notice of the priority issue in its decision instituting *inter partes* review?

2.    There are numerous features claimed in Patent No. D617,465 that are not disclosed in the patent's parent application, several of which Luv 'N Care wholly failed to address below despite having the burden of going forward with evidence on the issue of written description support.  Did the Patent Trial and Appeal Board properly find that the '465 Patent's parent application fails to provide written description support for the '465 Patent such that the patent is not entitled to the benefit of the parent application's filing date?

## STATEMENT OF FACTS

**A.    The '465 Patent and the admittedly invalidating prior art**

The patent-at-issue is U.S. Patent No. D617,465 (the "'465 Patent").    It claims "the ornamental design for a drinking cup," as shown in five figures:



(A19-22).  Luv 'N Care, Ltd. ("LNC") is the assignee of the '465 Patent.

The '465 Patent issued out of U.S. Application No. 29/292,909, which claims to be a continuation of U.S. Application No. 10/536,106 (the "'106 Application").  (A17).  The '106 Application was published as US2007/0221604 ("Hakim ('604)") on September 27, 2007.  (*See* A423).  Hakim ('604) was filed as a PCT application on August 5, 2003, and then filed in the U.S. on March 29, 2007.  (A423).  Hakim ('604) further claims priority to Provisional Application No. 60/400,669 (the "'669 Application"), although the '465 Patent does not claim

priority to the '669 Application. (A423; *see* A17). Thus, LNC claims that the '465

Patent is entitled to the benefit of the August 5, 2003 filing date. (*See e.g.* Blue

Br., at 20-21).

Like Hakim ('604), however, related U.S. Patent No. 6,994,225 ("Hakim

('225)") claims priority to the '669 Application, filed on August 5, 2002. (A493).

The disclosures of Hakim ('604) and Hakim ('225) are similar as they relate to the

*inter partes* review of the '465 Patent.

The '106 Application (also Hakim ('604)) to which LNC claims priority is a

utility application directed to no-spill drinking products. The relevant figures in

that application (generally Figures 8 – 12) appear to disclose a cup that differs

from the design claimed in the '465 Patent in several important respects.



(A744).

As such, Munchkin filed its petition requesting *Inter Partes* Review ("IPR")

of the '465 Patent on December 5, 2012, arguing in relevant part that the '465

Patent is not entitled to claim priority to the '106 Application, and that the patent's relevant priority date is therefore its own filing date of October 31, 2007. (*See e.g.* A36). Munchkin identified at least four areas of difference between the '465 Patent and '106 Application in its Petition: inconsistent air vent holes, inconsistent slit lines inside the vent holes, inconsistent external spout configurations, and inconsistent internal spout configurations. (*See* A38-43). With a filing date of October 31, 2007, Munchkin argued, Hakim ('604) and Hakim ('225) become relevant prior art references, and each renders the '465 Patent obvious under 35 U.S.C. § 103. (*See e.g.* A36-37)

The Patent Trial and Appeal Board ("PTAB") issued a decision instituting review of the '465 Patent on April 25, 2013. (A91). The PTAB in that decision specifically noted Munchkin's "arguments regarding the effective filing date of the claim of the '465 Patent," namely "that Hakim '604 [*i.e.*, the '106 Application] does not provide written description support for the claim of the '465 Patent." (A96, A97). And the PTAB agreed with Munchkin on this issue:

> Figure 12a does not show the same design as that of the '465 Patent, as best viewed in Figure 3 supra. For example, the '106 Application, which shows a racetrack-shaped spout tip, does not disclose the claimed oval-shaped spout tip of the '465 Patent. Also, the '106 Application, which shows slits in the openings of the spout tip and vent, does not disclose the broader design of the '465 Patent, which lacks any such slits.

4

For at least these reasons, possession of the claimed design of the '465 Patent is not shown as of the filing date of the '106 Application.

(A97).

Because the PTAB found that the '465 Patent was not entitled to the benefit of the filing date of the '106 Application, it considered Hakim ('604) and Hakim ('225) as relevant prior art, and found it reasonably likely that each renders the '465 Patent obvious.  (A103-06).  It therefore granted Munchkin's Petition on two grounds: the claim of the '465 Patent as obvious over Hakim ('604); and the claim of the '465 Patent as obvious over Hakim ('225).  (A113).

**B.    Before the PTAB, LNC focused on amending the '465 Patent, and made little effort to establish a right to an earlier filing date in the absence of amendment**

On July 25, 2013, following the PTAB's decision to institute review, LNC filed two papers: a motion to amend its patent claim and a response to the PTAB's decision to institute review.  In its motion to amend, LNC explained that it was modifying "various claimed and unclaimed features of the drinking cup design in order to conform those features to certain figures" of the '106 Application.  (A131).  LNC claimed that its amendments were being made "in response to the priority findings" made by the PTAB in its decision to institute review.  (A131).  LNC's proposed amendments were best captured by Figures 2 and 3 of the '465 Patent:



| U.S. Patent D617,465 | Proposed Amendment |
|---|---|
| '465 Patent – Fig. 2 | Fig. 2 Proposed Amendment |
| '465 Patent – Fig. 3 | Fig. 3 Proposed Amendment |

(A129).

In its seven-page response to the PTAB's decision to institute review, LNC referred largely to these proposed amendments in order to establish "continuity . . . between the '106 Application and the present patent" and thereby overcome the obviousness findings based upon Hakim ('604) and Hakim ('225). (A141-42). As such, LNC devoted barely over one page of its response to its alleged entitlement to the benefit of the filing date of the '106 Application in the absence of any amendments. (*See* A143-44). And for this argument, LNC raised only two points:

that "the parent '106 Application discloses in the written description that the spout tip can be oval shaped"; and that the slits depicted within the spout tip and vent in the '465 Patent are unclaimed and that the '106 Application "is not limited to any particular type of opening," in any event.  (A143-44).  With no more than that, LNC concluded that "the issued drawings of the '465 patent were supported by the specification of the parent '106 application."  (A144).  It made no argument that the '465 Patent was valid over Hakim ('604) or Hakim ('225) in the absence of an entitlement to the priority date of the '106 Application.  (*See* A139-44).

During the oral hearing, the PTAB questioned LNC on a range of topics, including whether the '106 Application provided any support for the third concentric ring claimed in relation to the spout in the '465 Patent.[1]  (*See* A273-76, A286-89).

---

[1] LNC at the hearing again conceded that Hakim ('604) and Hakim ('225) would be invalidating prior art references in the absence of an entitlement to the priority date of the '106 Application.  (*See* A271:10-17).



(*See* A21).  The PTAB then afforded LNC an opportunity to explain its position as to that ring.  (*See* A273-76, A286-89).

The PTAB issued its Final Decision on April 21, 2014, sustaining both of the grounds of unpatentability upon which it had granted review.  (A1, A15).  With respect to the issue of priority, the PTAB explained that Munchkin had argued "that the '106 application lacks support for the claim of the '465 patent" and that its argument was "based, in part, on differences between the spout of the claimed design and the spout described and shown in the '106 application."   (A6).  Referring to the same figures it had relied upon in its decision to institute review— Figure 3 of the '465 Patent and Figure 12a of the '106 Application—the PTAB found that "the claimed design of the '465 patent includes a spout tip that is different than that disclosed in the '106 application."  (A7).



(A7).

The PTAB delineated three differences:

Specifically, and as viewed from the top, (1) the outer boundary of the spout tip of the claimed design is larger than that of the '106 application; (2) the spout tip of the claimed design has a different, more rounded, oval shape than that of the racetrack shape of the spout tip in the '106 application; and (3) the spout tip of the claimed design has three concentric rings that the '106 application does not disclose.

(A7). As such, it found that "the claim of the '465 patent is not entitled to the benefit of the filing date of the '106 application." (A8).

The PTAB then went on to deny LNC's motion to amend on the basis that LNC's amendments impermissibly broadened the '465 Patent's claim. (*See* A12-14). Focusing on a comparison of Figure 3 as issued and Figure 3 as amended, it specifically found that "the proposed amended claim is broader than the issued claim because it is broader with respect to racetrack-shaped spout tips and raised rim vents." (A14).

In the absence of an entitlement to priority—via an amended claim or otherwise—the PTAB found the '465 Patent unpatentable under 35 U.S.C. § 103 as obvious over Hakim ('604) and Hakim ('225). (A15).

On appeal, LNC challenges only the PTAB's decision that the '465 Patent as issued is not entitled to the benefit of the filing date of the '106 Application. It does not challenge the PTAB's denial of its motion to amend, nor does it challenge that the '465 Patent is obvious over Hakim ('604) and Hakim ('225) in the absence of priority to the '106 Application. (*See e.g.* Blue Br., at 1-2).

## SUMMARY OF THE ARGUMENT

In responding to the PTAB's decision to institute *inter partes* review of the '465 Patent, LNC put virtually all of its proverbial eggs into one basket—its effort to amend the claim of the '465 Patent in order to conform that claim to the disclosures of the '106 Application. In doing so, it gave short shrift to the question of whether the '465 Patent *as issued* is entitled to the benefit of the filing date of the '106 Application, failing almost entirely to come forward with any evidence or argument on the issue. After having lost on both its motion to amend and on the question of whether the '465 Patent as issued is entitled to priority, LNC now challenges the PTAB's findings only on the latter issue—the one it largely ignored below. This series of decisions now requires LNC to put forth a number of post hoc arguments that it either failed to present or affirmatively contradicted below.

10

Not surprisingly, its current arguments are thus shot-through with holes and inconsistencies.

For example, LNC's argument that the PTAB denied it notice and an opportunity to introduce evidence and argument concerning certain issues related to the issue of priority is merely a product of its own failure to come forward with evidence on these issues when it had the burden to do so. The PTAB clearly put LNC on notice that a primary issue in the review was whether the '106 Application provides written description support for the claim of the '465 Patent. And this Court has unambiguously held that the patentee has the burden of coming forward with evidence on this issue under the circumstances present here. LNC simply failed to do enough to prevail on this issue below, and it cannot now receive a "do-over" through its transparent notice argument.

Similarly, the majority of LNC's arguments on appeal concerning the differences (or, in its view, lack of differences) between the '465 Patent and the '106 Application revolve around a view of the third concentric ring claimed in Figure 3 of the '465 Patent that it failed to present to the PTAB. In fact, its new view of this claimed feature affirmatively contradicts the view it took in support of its motion to amend below, and further renders the '465 Patent's claim inconsistent and unclear. The '106 Application simply does not disclose the third ring claimed

in the '465 Patent—or anything that correlates to that ring—and LNC's shifting position concerning the ring confirms that fact.

LNC's argument concerning the different shape of the spout tip claimed in the '465 Patent as compared to the spout tip disclosed in the '106 Application is equally illogical. LNC would have the Court evaluate this difference based solely on its own self-serving definitions of the terms "oval" and "racetrack," ignoring that its view of these terms is inconsistent with the actual illustrations in the '465 Patent and '106 Application. Those illustrations make clear that the '106 Application simply does not disclose the particular spout tip shape later claimed in the '465 Patent.

In sum, the PTAB's finding that the '106 Application fails to provide written description support for the '465 Patent is supported by substantial evidence, and it made no legal or procedural errors in concluding that the '465 Patent is not entitled to the benefit of the filing date of the '106 Application. Rather, the errors and omissions were and are LNC's, and it is therefore not entitled to reversal.

## ARGUMENT

### A.    This court reviews legal findings *de novo* and reviews factual findings for "substantial evidence"

"The statutory provision governing the effective filing date of the subject matter of continuing applications, 35 U.S.C. § 120, applies to design patents as to utility patents." *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998). In order to

12

be entitled to priority pursuant to section 120, "a continuation must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1" (now ¶ 112(a)). *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013). And "[t]he test for sufficiency of the written description, which is the same for either a design or a utility patent, has been expressed as 'whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Id.* (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir.2010)).

"Priority of an invention is a question of law to be determined based upon underlying factual determinations." *Amkor Technology, Inc. v. ITC*, 692 F.3d 1250, 1254 (Fed. Cir. 2012) (citation omitted). This is true of priority determinations made under 35 U.S.C. § 120, as well. *See In re Daniels*, 144 F.3d at 1456 (recognizing the possibility of "disputed factual questions" in section 120 priority context). And "[w]hether a claimed invention is supported by an adequate written description under § 112, ¶ 1, is a question of fact." *In re Owens*, 710 F.3d at 1366.

Thus, this Court reviews the legal conclusion of priority *de novo*. *In re Owens*, 710 F.3d at 1366. Its review of the PTAB's factual findings, however, must take place within the framework set forth in the Administrative Procedure Act (APA). *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999). Pursuant to 5 U.S.C. §

706, this Court reviews the PTAB's factual findings for "substantial evidence." *Id.* at 162; *see In re Owens*, 710 F.3d at 1366.  This standard is "somewhat less strict" than the clearly erroneous standard that this Court applies on an appeal from a district court, and requires the Court "to ask whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Dickinson*, 527 U.S. at 152   (internal quotations omitted).  As this Court has explained, "where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1328-29 (Fed. Cir. 2002).

**B.    The PTAB gave LNC adequate notice on the issue of priority, but LNC failed to come forward with evidence**

As explained below, there was no deficiency in the notice given by the PTAB concerning priority, only a deficiency in LNC's evidence and arguments.

### 1.    LNC had the burden of coming forward with evidence of entitlement to an earlier filing date

A persistent misconception runs throughout LNC's Blue Brief, just as it ran through LNC's arguments below—namely, the assumption that Munchkin (or the PTAB) somehow had the burden to bring forward evidence to *refute* LNC's assumed entitlement to the benefit of the filing date of the '106 Application.  The reality, however, is that once it admitted that the references relied upon by

14

Munchkin would render the '465 Patent invalid should it not be entitled to the filing date of the '106 Application, *LNC* had the burden of coming forward with evidence on the issue of priority.

It is true that in an IPR "the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence." 35 U.S.C. § 316(e). Thus, the ultimate burden of proving invalidity before the PTAB rested on Munchkin, just as it would have in court. Notwithstanding this ultimate burden, however, "the burden of going forward [with evidence] may jump from one party to another as the issues in the case are raised and developed." *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008). This is true with respect to the issue of priority.

This Court addressed this issue specifically in *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008). The patentee there argued that the defendant—*i.e.*, the party asserting invalidity—must always bear the burden of proof as to whether patent claims are entitled to the priority date of a parent application. *Id.* at 1304. While the Court agreed that the defendant must ultimately prove that an asserted patent is invalid, it explained that once the defendant "has established a prima facie case of invalidity" the patentee "is then obligated to come forward with evidence to the contrary." *Id.* at 1305. In *PowerOasis*, the patentee had conceded that unless the asserted claims were

accorded an earlier filing date, the references put forth by the defendant would qualify as § 102(b) prior art. *Id.* As such, the Court found that the defendant had established a prima facie case of invalidity and that it was therefore *the patentee's* burden "to come forward with evidence to prove entitlement to claim priority to an earlier filing date." *Id.* at 1305-06.

This Court further clarified this holding in *Technology Licensing*. In that case, which involved facts similar to those in *PowerOasis*, the Court explained that a challenger to a patent has the initial burden of putting forth prior art that pre-dates the application date of the patent-at-issue. 545 F.3d at 1327. At that point, the patentee has the burden of going forward with evidence that such art "is not prior art because the asserted claim is entitled to the benefit of a filing date prior to the alleged prior art." *Id.* "This requires [the patentee] to show not only the existence of the earlier application, but *why the written description in the earlier application supports the claim*." *Id.* (emphasis added). Even more specifically, this "means producing sufficient evidence and argument to show that an ancestor to the [patent-at-issue], with a filing date prior to the [relevant prior art] date, *contains a written description that supports all the limitations of . . . the claim being asserted*." *Id.* (emphasis added).

In this case, LNC admitted before the PTAB that the '465 Patent is not patentably distinct from Hakim ('604) and Hakim ('225).[2] (*See* A143-44; A271; A5). In other words, LNC admitted that Hakim ('604) and Hakim ('225) are invalidating references. As such, pursuant to *PowerOasis* and *Technology Licensing*, LNC had the burden of going forward with evidence that Hakim ('604) and Hakim ('225) are not prior art at all because the '465 Patent is entitled to the benefit of the filing date of the '106 Application. This burden did not merely require LNC to defensively refute points made by Munchkin (or the PTAB), but required LNC to produce sufficient evidence and argument to show that the '106 Application "contains a written description that supports all the limitations of" the '465 Patent's claim. *Technology Licensing*, 545 F.3d at 1327. As explained below, LNC ignored this burden.

## 2. LNC did not come forward with sufficient evidence of entitlement to priority

LNC argues that the PTAB denied it an opportunity to present evidence concerning two (related) points that the PTAB relied upon in finding that LNC is not entitled to the benefit of the filing date of the '106 Application: whether the outer boundary of the spout tip claimed in the '465 Patent is larger than that disclosed in the '106 Application; and whether the spout tip claimed in the '465

---

[2] As noted above, LNC does not argue that the '465 Patent is valid over Hakim ('604) or Hakim ('225) on appeal, either.

Patent has three concentric rings not disclosed in the '106 Application. (*See* Blue Br., at 35-36). This argument is not, in actuality, born of any failure of notice or procedure on the PTAB's part, but instead is merely a reflection of LNC's own failure to apprehend that it had the burden of going forward with evidence on the issue.

As explained above, as a result of its admission concerning the nature and effect of Hakim ('604) and Hakim ('225), LNC had the burden of going forward with evidence that the '106 Application contains a written description that supports "all the limitations" of the '465 Patent's claim. *Technology Licensing*, 545 F.3d at 1327. Regardless of the points made by Munchkin (or the PTAB), LNC therefore had an obligation to explain how the '106 Application supported *every aspect* of the design claimed in the '465 Patent—including both the size of the spout and the third concentric ring claimed in the '465 Patent. *See id*. LNC failed to do so.

LNC's disinterest in going forward with any affirmative evidence on these points—and numerous others related to the issue of priority—is clear from the record before the PTAB and LNC's briefing on appeal. In its response to the PTAB's decision to institute review, for example, LNC devoted barely a single page to explaining how or why the '106 Application supported the "drawings of the '465 [P]atent," and even then it addressed only the two exemplary objections noted by the PTAB in its decision to institute review. (*See* A143-44). Despite this

fatally brief treatment of its entitlement to priority, LNC now tellingly pleads that it "*could* have provided evidence by way of testimony on the issue of the size of the outer tip of the spout" and "*could* have provided evidence regarding the third ring." (Blue Br., at 36 (emphases added)). But LNC knew all along that its entitlement to the benefit of the filing date of the '106 Patent was critical to the survival of the '465 Patent. That the PTAB raised points on this issue that LNC previously chose not to address does not mean that such points were new or improper. Rather, it means that LNC failed to go forward with evidence on such points when it was its burden to do so. This Court should reject LNC's notice argument for this reason alone.

### 3.    The PTAB gave LNC sufficient notice on the issue of priority, in any event

Even setting aside LNC's failure to come forward with evidence or arguments, the PTAB for its part did not limit the scope of its review on the issue of priority. As explained above, it granted review on two "grounds": "[t]he sole claim as obvious over Hakim '604" and "[t]he sole claim as obvious over Hakim '225." (A23). Because these two references were intervening references, however, the PTAB in its decision to institute review specifically noted "[Munchkin's] arguments regarding the effective filing date of the claim of the '465 Patent." (A96). Even more specifically, the PTAB expressly identified the priority issue that Munchkin raised in its petition: "that Hakim '604 [*i.e.*, the '106

Application] does not provide written description support for the claim of the '465 Patent." (A97).

In examining this issue, the PTAB in its decision to institute review reproduced Figure 12a from the '106 Application, which is a top view of the design disclosed there, and stated that "Figure 12a does not show the same design as that of the '465 Patent, as best viewed in Figure 3." (A97). Notably, Figure 12a from the '106 Application and Figure 3 from the '465 Patent are the same figures that the PTAB ultimately relied upon in its Final Decision in finding that the '106 Application does not provide written description support for the '465 Patent.[3] (A7). And although the PTAB in its decision to institute review highlighted two of the various specific differences between these figures, the PTAB was careful to note that these two differences were exemplary, not exhaustive:

> *For example*, the '106 Application, which shows a racetrack-shaped spout tip, does not disclose the claimed oval-shaped spout tip of the '465 Patent. Also the '106 Application, which shows slits in the openings of the spout tip and vent, does not disclose the broader design of the '465 Patent, which lacks any such slits.

> *For at least these reasons*, possession of the claimed design of the '465 Patent is not shown as of the filing date of the '106 Application.

---

[3] Moreover, Munchkin in its initial petition specifically highlighted an "[i]nconsistent external spout configuration" and an "[i]nconsistent internal spout configuration" as differences between the '106 Application and the '465 Patent, both of which implicate the outer boundary of the spout tip and the three concentric rings that LNC now claims it knew nothing about. (A41-43).

(A97 (emphases added)).

Given the language and analysis in the PTAB's decision to institute review, there was no basis for LNC to believe that the PTAB somehow intended to limit its review on the issue of priority to the two, narrow exemplary features that the PTAB identified at that time. Rather, the PTAB clearly put LNC on notice that the governing issue raised by Munchkin was *whether the '106 Application provides written description support for the claim of the '465 Patent*. The PTAB itself later confirmed this point during the oral hearing after sensing that LNC there, as here, was attempting to shirk its burden of going forward with evidence on the issue of priority:

> JUDGE FITZPATRICK:  I want to interrupt you there.  In a general sense, they alleged that you didn't have priority.  And we made the initial determination that that's reasonably likely.  And in response, *you should make your case as to why you are entitled to priority*.

(A302:12-15 (emphasis added)).  Despite LNC's own failure to go forward with evidence on the issue of priority, the PTAB nevertheless gave LNC the opportunity to present oral argument concerning all of the bases the PTAB ultimately relied upon in finding that LNC is not entitled to the benefit of the filing date of the '106 Application.  (*See* A273-76, A286-89).

The PTAB handled its review in this regard in a manner consistent with the statutes and regulations governing *inter partes* review.  The PTAB authorizes *inter*

*partes* review on a claim-by-claim and ground-by-ground basis.  37 C.F.R. § 42.108(a), (c).  A "claim" is the patent claim being challenged, while a "ground" refers to the "statutory grounds under 35 U.S.C. 102 or 103 on which the challenge to the claim is based," which is obviously closely tied to "the patents or printed publications relied upon for each ground."  37 C.F.R. § 42.104(b)(1), (2).  By authorizing trial to proceed only on certain claims and particular grounds—as the PTAB did in this case—the PTAB necessarily "streamline[s] the issues for final decision."  Trial Prac. Guide, 77 Fed. Reg. 48756, 48765 (Aug. 14, 2012).  The statutory and regulatory scheme for *inter partes* review places no further obligation upon the PTAB to narrow or identify particular details in a decision to institute review.

In addition, the issue of section 120 priority is not a direct statutory "ground" of unpatentability.  LNC ignores this fact, apparently assuming that the PTAB's obligation to identify the "claims" and "grounds" upon which review will proceed somehow requires the PTAB to include in its decision to institute review every jot and tittle of its ultimate final decision on a subsidiary issue like priority.  The statutory and regulatory scheme for *inter partes* review does not so obligate the PTAB.  Nevertheless, the PTAB in its decision to institute review provided just as much detail concerning priority as it did concerning the primary claims and grounds upon which it was granting review—*e.g.*, by expressly identifying the

relevant issue as whether the '106 Application provides written description support for the claim of the '465 Patent, and even highlighting the drawings critical to its ultimate conclusion on this issue. There is simply no basis upon which to conclude that the PTAB failed to notify LNC with respect to the issue of priority.

LNC's position is not only contrary to the relevant *inter partes* review statutes and regulations, but also the legal principles applied in analogous contexts. In *In re Hedges*, 783 F.2d 1038, 1039 (Fed. Cir. 1986), for example, the PTO Solicitor on appeal "elaborated on and strengthened" the position taken by the Board of Patent Appeals and Interferences in rejecting a patent applicant's claims, including by drawing upon additional prior art references that were of record but not relied upon by the Board. In response, the applicant argued that the Solicitor's position presented new grounds of rejection, and that he had been deprived of the opportunity to respond and produce rebuttal evidence before the PTO. *Id.* This Court rejected the applicant's argument, explaining that the Solicitor had "done no more than search the references of record for disclosures pertinent to the same arguments for which [the applicant] cited the references." *Id.* at 1039-40. As the Court further concluded, "[t]he Solicitor should not be constrained from pointing to these same references in contravention of [the applicant's] position." *Id.* at 1039.

In the same way, and regardless of the details included within the PTAB's decision to institute review, the PTAB here was not constrained from relying on *any* of the disclosures of the already-identified '106 Application and '465 Patent in order to conclude that LNC is not entitled to priority, or in order to contravene LNC's position that it is entitled to priority.[4] This is particularly true given that the specific figures ultimately relied upon by the PTAB were the very same figures most prominently scrutinized by both parties throughout the review.

Finally, it is worth noting that LNC's conception of "notice" would turn the *inter partes* review scheme on its head. Indeed, by requiring every detail of a final decision to have appeared in a prior decision to institute review, LNC's position dictates virtual identity between a decision to institute review and a final decision. This leaves the PTAB with no room to conduct a meaningful "review" at all, and undercuts the scheme for discovery, post-institution briefing, and submission of supplemental information provided for by statute. S*ee e.g.* 35 U.S.C. § 316(a)(3), (a)(5). It also would inevitably lead the PTAB to be over-inclusive with respect to the details and grounds included within a decision to institute review, which would

---

[4] This Court has also held that waiver—a concept closely related to notice—attaches only to claims or issues, not "specific evidentiary argument[s]." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001). Accordingly, it has held that raising a "general issue" like written description is sufficient to prevent waiver of more specific arguments encompassed by such an issue. *See Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1338 n. 11 (Fed. Cir. 2005) (finding that "it was sufficient that Teva raised the general issue of enablement").

threaten the PTAB's focus on expedience in resolving review proceedings.  *See* 35

U.S.C. § 316(a)(11).  This Court should not—and need not—go down this road on

the basis of LNC's argument here.

## C.    There is no basis to disturb the PTAB's finding that the '465 Patent is not entitled to the benefit of the filing date of the '106 Application

As previously explained, the PTAB found that the '465 Patent was not

entitled to the benefit of the filing date of the '106 Application for three reasons:

"(1) the outer boundary of the spout tip of the claimed design is larger than that of

the '106 application; (2) the spout tip of the claimed design has a different, more

rounded, oval shape than that of the racetrack shape of the spout tip in the '106

application; and (3) the spout tip of the claimed design has three concentric rings

that the '106 application does not disclose."  (A7).  LNC relies upon an entirely

new and non-sensical claim construction position in support of its argument

concerning differences (1) and (3), and it avoids the actual illustrations of the '465

Patent and '106 Application in addressing difference (2).  In every instance, the

PTAB's conclusion is supported by substantial evidence.

Munchkin addresses differences (1) and (3) together below, then follows

with a discussion of difference (2), and then concludes this section with a

discussion of a number of additional differences that provide alternative grounds

for affirming the PTAB's holding.

1.    **The PTAB's denial of priority on the basis of the third concentric ring (differences (1) and (3)) is correct and not subject to reversal**

Differences (1) and (3) between the '465 Patent and '106 Application identified by the PTAB are closely related in that they both involve the third concentric ring of the spout claimed in the '465 Patent.[5]  LNC argues that this ring is "a contour line representing the sloped base of the spout where it meets the 'pancake' portion of the lid."  (Blue Br., at 52).  Although LNC admits that the '106 Application does not depict any such ring, it argues that because the side and sectional views of the spout disclosed in the '106 Application depict a sloping base, the addition of the third concentric ring in the '465 Patent does not represent new matter.  But this was not the way that LNC conceived a third concentric ring before the PTAB, and its new position is therefore procedurally improper.  In addition, the arbitrary and changing nature of LNC's argument reveals precisely why the '106 Application does not disclose the third ring as claimed in the '465 Patent.

a.    **LNC's new claim construction argument on appeal is improper**

As noted, LNC on appeal argues that the third concentric ring depicted in Figure 3 of the '465 Patent is "a contour line representing the sloped base of the

---

[5] LNC concedes as much when it argues that "[t]he explanation for the existence of the third oval ring (D3) also accounts for why the ring appears larger than the outer (second) ring in the parent '106 application."  (Blue Br., at 50).

spout where it meets the 'pancake' portion of the lid." (Blue Br., at 52). LNC therefore disputes the PTAB's conclusion that this ring "is part of the spout <u>tip</u>." (Blue Br., at 49 (emphasis in original). But LNC not only failed to challenge the PTAB's view below, it affirmatively took the position that a third ring formed part of the spout tip, as well. It cannot change its position now.

The PTAB for its part construed the '465 Patent's claim as "the ornamental design of the drinking cup, as illustrated in Figures 1-5, except that the broken lines do not form part of the claimed design." (A101). The PTAB further noted, however, that it was "helpful to describe verbally certain features of the claim." *Id.* To that end, it noted in relevant part that "[t]he spout is not radially symmetrical; instead it has a drinking tip that is off center." (A101). In so describing the spout, the PTAB clearly viewed the three concentric circles as representing a single "drinking tip."

The PTAB made this point even more explicit in its Final Decision. Specifically, in identifying differences (1) and (3) between the '465 Patent and '106 Application, the PTAB expressly included the third ring within the spout tip. Concerning difference (1), for example, the PTAB labeled the third ring "the outer boundary of the spout tip." (A7). In explaining difference (3), the PTAB stated that "the spout tip of the claimed design has three concentric rings." (A7). And in reproducing Figure 3 of the '465 Patent and Figure 12a of the '106 Application, the

PTAB annotated the three concentric rings in Figure 3 with the label "spout tip." (A7).

LNC made no effort to specifically address the PTAB's view of the third concentric ring claimed in the '465 Patent. Nevertheless, it is clear from the record that LNC conceived three concentric rings to represent boundaries or edges at the top of the spout. It addressed this issue in the context of its motion to amend the '465 Patent and its response to the PTAB's decision to institute review, both of which discussed its proposed amendments to Figure 3 (among others):



| U.S. Patent D617,465 | Proposed Amendment |
|---|---|
| '465 Patent – Fig. 3 | Fig. 3 Proposed Amendment |

(A129). In explaining this amendment, LNC asserted that "[t]he overall perimeter shape of the spout has been amended to match the 'race-track' shape in Figure 8E of the '106 application, including structure and relative sizes." (A140). In other words, LNC through its proposed amendment believed that it was simply substituting one "perimeter shape" for another. It took no account of any alleged slope or contour that the spout as depicted in either the original or amended Figure

3 might have had. As such, LNC at that time did not believe that the third concentric ring had anything to do with the contour of the spout at its base.

Moreover, although LNC's proposed amended Figure 3 of the '465 Patent (as well as Figure 8E of the '106 Application) appeared to contain only two concentric rings associated with the spout, LNC at the oral hearing produced an alleged magnified view of its proposed amended Figure 3 revealing that its proposed amendment did, in fact, include three concentric rings:



(A233). According to LNC, the third concentric ring in proposed amended Figure 3 corresponded to two points (labeled 3 and 6, above) on the convex surface at the

top of the spout.  (*See* A286-87).  Thus, just as it had previously stated in its motion to amend, LNC affirmed that three concentric rings denoted the shape of the spout *at the tip*.

LNC's current construction departs significantly from this position.  It now claims that the placement of the third concentric ring in the '465 Patent corresponds to a point at "the sloped base of the spout where it meets the 'pancake' portion of the lid." (Blue Br., at 52).  This point appears not on the convex surface at the top of the spout, as in its proposed amended Figure 3, but on a *concave* surface at the *bottom* of the spout.  No longer does LNC refer to the rings collectively as depicting "the overall perimeter shape of the spout" at its tip, as it did below.  Instead, LNC now defines the shape of the spout tip only by reference to the first two concentric rings, giving the third ring an entirely different function as a "contour line." (Blue Br., at 52).

This new argument on appeal is improper.  "[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below."  *Conoco, Inc. v. Energy & Envtl. Intl., L.C.*, 460 F.3d 1349, 1358–59 (Fed. Cir. 2006).  "A claim construction argument is considered 'new' if a party changes the scope of the claim construction rather than clarifying or defending the original scope of its claim construction."  *Solvay S.A. v.*

*Honeywell Intl. Inc.*, 742 F.3d 998, 1003 (Fed. Cir. 2014) (internal quotations omitted).

Here, because LNC never challenged the PTAB's view of the third concentric ring in Figure 3 of the '465 Patent or otherwise offered a specific construction or interpretation of the meaning of such a ring, LNC's very specific appeal argument concerning the third ring is necessarily new.  (Blue Br., at 52); *cf. LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1341 (Fed.Cir.2005) (A party that "agreed to the district court's construction at the time ... cannot [on appeal] argue against that claim construction simply because it resulted in an adverse ruling.").

In addition, LNC's current construction represents a clear change in scope as compared to its treatment of the third concentric ring in its proposed amended Figure 3 of the '465 Patent below.  As noted above, LNC's view with respect to proposed amended Figure 3 was that three concentric rings denoted the shape of the spout *at the tip*—just like the PTAB's view of the three concentric rings in the '465 Patent as claimed.  LNC itself now distinguishes its current construction from this view—arguing that the third ring represents a contour at the bottom of the spout rather than a boundary at the top—in an attempt to align the scope of the '465 Patent with the alleged disclosures of the '106 Application.  LNC would not make this argument if it did not materially affect the scope of the '465 Patent.

Thus, under any view of the record below, LNC's claim construction argument on appeal is new. This Court should therefore decline to consider it.

**b.    LNC's claim construction argument on appeal is non-sensical, in any event**

Even if not procedurally barred, LNC's current construction of the third concentric ring in Figure 3 of the '465 Patent makes no sense. As an initial matter, it is not apparent that the third ring is a "contour" line at all. LNC refers to 37 C.F.R. § 1.152 governing design drawings, claiming that this regulation requires inventors to show the character or contour of surfaces represented in drawings. (*See* Blue Br., at 55).    But this section merely recommends, not requires, an inventor to show surface contour. 37 C.F.R. § 1.152. And if an inventor intends to show contour, the section makes clear that the inventor should do so through "[a]ppropriate and adequate *surface shading*." *Id.* (emphasis added). Nowhere does this section—or any other—permit or encourage inventors to represent contour through the use of a solid line in the manner LNC alleges it has done through the third ring here.[6]    As a result, LNC's construction of the ring as a contour line is without basis.

---

[6] LNC also cites *Chef'n Corp. v. Trudeau Corp.*, No. C08-1135, 2009 WL 1564229 (W.D. Wash. June 4, 2009), but that case is inapplicable for a number of reasons. First, it is a district court decision and is thus not binding on this Court. Second, because the court there was addressing the defendant's motion for summary judgment, the court drew all inferences in favor of the patentee, and therefore merely accepted as true the patentee's own interpretation that certain

Even if one assumes that the third ring is a contour line, however, LNC's construction is still non-sensical.   It is clear from Figure 3 of the '465 Patent that the three concentric rings are radially symmetrical.   That is, the first (innermost) ring is centered within the second, and the second is centered within the third.   As the PTAB noted, however, the spout itself is *not* radially symmetrical, as the spout tip—represented in its view by the three concentric rings—is not centered within the spout.   (A101).   Because the spout is not radially symmetrical, the rear curvature of the spout is significantly different from the contour of the front of the spout.   This difference is best viewed in Figure 2 (a side view):

---

solid lines in the claimed design depicted a change in curvature or slope.  *Id.* at *4. The court conducted no independent claim construction or other analysis regarding these claimed lines, nor did it cite any authority from this Court on the issue.  *See id.  Chef'n* is therefore irrelevant to the design at issue in this case.



(*See* A20).   As can be seen, the rear of the spout curves more aggressively, transitioning to a near-horizontal plane where, as LNC puts it, the base of the spout meets the "pancake portion of the lid."

Given the more longitudinal curvature of the spout's rear side as compared to its front side, the point at which the base of the spout meets the "pancake portion of the lid" occurs further away from the spout tip longitudinally on rear side than the front side.  As such, any two-dimensional contour line representing the point at which the base of the spout meets the "pancake portion of the lid" would necessarily be asymmetrical in relation to the spout tip.

Perhaps knowing this to be true, LNC in its brief annotates a figure from the '106 Application to show the point at which it believes the third concentric ring meets the base on the rear side of the spout, but it conspicuously fails to note the corresponding point on the front side of the spout. (*See* Blue Br., at 52). Even assuming that LNC's arbitrary placement of this dashed line on the rear side of the spout actually depicts the point at which "the sloped base of the spout . . . meets the 'pancake' portion of the lid,"[7] inserting a line corresponding to the point at which this alleged contour line would fall on the front side of the spout reveals that the boundary of the tip of the spout (the two innermost rings) would be closer to the third ring on the front side of the spout than the rear side:



---

[7] LNC does not explain how one may determine precisely where the "the sloped base of the spout . . . meets the 'pancake' portion of the lid," and its own verbal explanation in this regard could conceivably describe a range of points. As such, LNC's placement of the third ring (and the first and second rings, for that matter) in its figures on page 52 of its brief are entirely arbitrary. This is yet another reason to reject LNC's position.

(*See* Blue Br., at 52). This would result in three concentric rings in Figure 3 that are *not* radially symmetrical. But this is not how the rings are depicted in Figure 3 as issued.

Alternatively, the same point can be seen by reproducing LNC's dashed lines in a manner consistent with the symmetry depicted between the rings in Figure 3 of the '465 Patent. Thus, taking a mirror image of LNC's dashed lines and reproducing them on the front side of the spout reveals that the third concentric ring (under LNC's proposal) would improperly strike the spout base far lower on the front side than on the rear side:



LNC Graphic, Blue Br., p. 52 (Alternate Annotated)

(*See* Blue Br., at 52).   Under either analysis, it is clear that LNC's current construction is fatally inconsistent with the claim of the '465 Patent as revealed in Figure 3.[8]  This Court should reject LNC's construction for this reason, as well.

### c.    The '106 Application does not disclose the third concentric ring under any construction

Under any construction of the '465 Patent, the '106 Application fails to disclose the third concentric ring claimed in Figure 3 of the '465 Patent.  If the third ring is construed as a boundary or edge at the tip of the spout, as the PTAB properly found, then the PTAB's subsequent findings concerning the differences between the '465 Patent and the '106 Application—*i.e.*, that the outer boundary of the spout tip of the claimed design is larger than that of the '106 application and that the spout tip of the claimed design has three concentric rings that the '106 application does not disclose (differences (1) and (3) from its Final Decision)—are

---

[8] At a minimum, LNC's proposed construction raises serious questions of indefiniteness pursuant to 35 U.S.C. § 112.  Indeed, LNC's proposed construction renders the drawings of the '465 Patent plainly inconsistent, making the overall appearance of the design critically unclear.  *See* MPEP § 1503.02 (at ¶15.48) (stating that it is of "utmost importance" that design patent drawings "be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture," and further explaining that an insufficient drawing "may be fatal to validity" pursuant to section 112 or "may have a negative effect with respect to the effective filing date of a continuing application.").  Because a section 112 invalidity challenge is outside the bounds of an IPR proceeding, however, the only possible construction that preserves validity pursuant to section 112 and makes sense of all of the patent's drawings is the construction adopted by the PTAB.

indisputably correct. Indeed, LNC plainly admits that "the third oval (D3) is larger than the ovals shown in the parent '106 application." (Blue Br., at 57).

Even if the third ring is construed as a contour line at the base of the spout, however, there is nothing in the '106 Application that supports the particular contour allegedly depicted by the third ring claimed in Figure 3 of the '465 Patent. The Court need look no further than LNC's shifting arguments concerning the nature of the third ring for proof of this fact.

As explained above, LNC's proposed amendment to Figure 3 below altered the appearance of the rings associated with the spout:

| U.S. Patent D617,465 | Proposed Amendment |
| --- | --- |
| '465 Patent – Fig. 3 | Fig. 3 Proposed Amendment |

(A129). Notably, LNC argued that Figure 8E of the '106 Application "fully supported" this proposed amendment to Figure 3, and it reproduced the two figures side-by-side in its motion to amend:



(A132, A133).  Given this explanation, LNC necessarily believed that Figure 8E of

the '106 Application contained the same three concentric rings included in

proposed amended Figure 3 (which LNC explained via its magnified

demonstrative, *see* Section C.1.a., *supra*).  (*See* A132-33).  Indeed, at the oral

hearing LNC explained that the placement of the three rings in its proposed

amended Figure 3—and specifically, points 1, 2, and 3 in the magnified view of

proposed amended Figure 3—corresponded to disclosures in the '106 Application.

(*See* A287-89).

    Thus, even moving beyond the fact that LNC has urged two fundamentally

different views of the meaning of a third concentric ring, the important point in this

context is that it has claimed that both views are supported by the disclosures of the

'106 Application.  But if Figure 8E of the '106 Application discloses a third ring

denoting a boundary at the tip of the spout, as LNC apparently believed in the context of its Motion to Amend below, then the '106 Application necessarily does not disclose a third ring denoting a contour at the base of the spout, as LNC now claims. Certainly, LNC cannot have it both ways. LNC cannot credibly claim, as it now does, that "[a] design patent draftsman would include this contour," referring to "the sloped base of the spout where it meets the 'pancake' portion of the lid," when the draftsman of LNC's proposed amended Figure 3 below omitted such a contour and included an entirely different line. (*See* Blue Br., at 53-54).

LNC is also wrong to the extent that it believes that so long as the '106 Application discloses a spout with a contour, it can simply place a third ring in *any* position and call it a "contour" line supported by the '106 Application. Indeed, the very fact that LNC does not deem itself tethered to any particular line reveals that the '106 Application discloses no specific contour corresponding to such a line. The disclosure of a vague, unspecified spout contour simply does not amount to a disclosure of the very particular third ring that LNC *chose* to claim in the '465 Patent.

In this regard, although LNC relies upon a number of pictorial comparisons and annotations in its Blue Brief, a comparison it conspicuously fails to make concerning the third ring is one between the disclosures of the '106 Application and the '465 Patent as issued. Specifically, LNC makes no effort to show how the

40

three concentric rings claimed in Figure 3 of the '465 Patent *actually* derive or relate to the spout disclosed in the '106 Application.  The closest LNC comes are the annotated figures on page 52 of its brief purporting to show the point at which it believes the third ring claimed in Figure 3 of the '465 Patent meets the base on the *rear* side of the spout disclosed in the '106 Application.  But, as noted above, a more complete example on LNC's part would reveal that the rings claimed in the '465 Patent would be radially asymmetrical were the third ring meant to denote the contour of the base of the spout disclosed in the '106 Application.

Thus, even under its own (erroneous) construction of the third concentric ring claimed in the '465 Patent, LNC simply has not met its burden of coming forward with evidence to establish that the '106 Application provides written description support for such a ring.  Moreover, the PTAB's conclusion that the spout tip of the claimed design has three concentric rings that the '106 application does not disclose and that the outer boundary of the spout tip of the claimed design is larger than that of the '106 application are supported by substantial evidence— namely, the illustrations themselves.  The '106 Application's failure to support the '465 Patent in this regard is sufficient to deny the '465 Patent priority to the '106 Application.

### 2.    The PTAB's denial of priority on the basis of the shape of the spout tip (difference (2)) is correct and not subject to reversal

Difference (2) between the '465 Patent and '106 Application identified by the PTAB—*i.e.*, that "the spout tip of the claimed design has a different, more rounded, oval shape than that of the racetrack shape of the spout tip in the '106 application"—is also supported by substantial evidence. All of the drawings from the '106 Application depicting the shape of the spout tip disclosed there differ significantly from the shape of the tip claimed via the figures of the '465 Patent. By omitting any comparison of how the drawings from the '106 Application relate to the figures of the '465 Patent, LNC itself implicitly concedes that none of the drawings from the '106 Application disclose the spout tip shape claimed in the '465 Patent. (*See* Blue Br., at 59-63). Rather, LNC resorts to arbitrary word games in order to find support for the claimed spout tip shape in the '106 Application. This effort is misplaced.

LNC first seizes upon the PTAB's description of the spout tip disclosed in the '106 Application as a "racetrack shape" and confers upon that phrase a very narrow, self-serving meaning that goes well beyond the concept the PTAB was conveying. Specifically, although LNC concedes that "[r]acetracks exhibit a variety of shapes," it nevertheless argues that the PTAB's use of the phrase "racetrack shape" *must* mean a shape having "two 'straightaways' connected by 180 degree turns at the ends of the straightaways." (Blue Br., at 8). Having set up

this straw man, it proceeds to argue that because the spout tip disclosed in the '106 Application does not have "straightaways," strictly construed, then the PTAB's finding concerning the '106 Application's disclosures must be erroneous. (*See* Blue Br., at 59-62).

But the PTAB used the phrase "racetrack shape" not as a binding construction of the '106 Application's drawings, but in order to explain the difference between those drawings and the figures of the '465 Patent. Regardless of the PTAB's language, that indisputable difference remains—as does LNC's failure to dispute it. The Court should therefore reject LNC's "racetrack" straw man out-of-hand.

LNC next argues that the '106 Application's explanation that the tip of the spout disclosed there is "oval" provides sufficient written description support for the "more rounded, oval shape" of the spout tip claimed in the '465 Patent. (*See* Blue Br., at 9-10, 62-63). Ironically, while LNC attempted to use the PTAB's use of the term "racetrack" in relation to the '106 Application against it, here it doubles-down on the PTAB's use of the term "oval" in relation to the '465 Patent. The flaw in LNC's reasoning is the same, however. Again, the PTAB used the phrase "more rounded, oval shape" not as a binding construction of the '465 Patent, but in order to explain the difference between the drawings in the '106

Application and the figures of the '465 Patent. That difference exists regardless of the PTAB's language.

In addition, the '106 Application's use of the term "oval" in relation to the tip disclosed there is far too broad a description to support the particular shape of the spout tip claimed in the '465 Patent. Indeed, as all of the drawings of the '106 Application reveal, the inventor there did not appear to envision the same sort of "oval" that was later claimed in the '465 Patent. As such, LNC effectively asks this Court to find that by using the broad term "oval" in the specification of the '106 Application, the inventor reserved every conceivable oval configuration—big, small, elongated, compressed—for any future design one might want to trace back to the '106 Application. This would open up the floodgates of priority by allowing inventors to claim section 120 priority for design patents based upon earlier-filed utility applications so long as they use expansive language that might broadly encompass a later design, regardless of an application's drawings.

LNC in this regard relies heavily upon *Racing Strollers, Inc. v. TRI Industries, Inc.*, 878 F.2d 1418 (Fed. Cir. 1989), in which this Court held that a design patent may be entitled to the filing date of a prior utility application, but LNC goes too far in its interpretation of that decision's language. The Court there explained that "meeting the remaining requirements of § 112 [as incorporated into § 120] is, in the case of an ornamental design, simply a question of whether the

earlier application contains illustrations, whatever form they may take, depicting the ornamental design illustrated in the later application and claimed therein . . . ." *Racing Strollers*, 878 F.2d at 1420. LNC argues that by modifying the term "illustrations" with the phrase "whatever form they may take," the Court was sanctioning reliance on a utility application's words to support a later design patent's pictorial illustrations, such that the '106 Application's reference to an "oval" spout tip is sufficient to support the '465 Patent's claimed spout tip. (*See* Blue Br., at 40).

It is not clear, however, that the *Racing Strollers* Court sanctioned a reliance on words at all—and even if it did, it did not do so in a way that supports LNC here. Indeed, in the sentence immediately preceding the passage relied upon by LNC, the *Racing Strollers* Court explained section 112's relation to design patents (via section 120) and, in doing so, distinguished between "illustrations" and a "description in words":

> In the case of an "ornamental design for an article of manufacture," with which we are here concerned, the patenting of which is provided for in 35 U.S.C. § 171, the "best mode" requirement of the first paragraph of § 112 is not applicable, as *a design has only one "mode" and it can be described only by illustrations showing what it looks like (though some added description in words may be useful to explain the illustrations)*.

878 F.2d at 1420 (emphasis added). Thus, the Court used the term "illustrations" to refer only to a pictorial representation of a design ("showing what it looks like").

And it used the phrase "description in words" not to refer to an illustration itself, but rather to explain that a use of words "may be useful to explain the illustrations."

As such, when the *Racing Strollers* Court used the phrase "illustrations, whatever form they may take" in the very next sentence, it was seemingly referring only to pictorial representations, not to a "description in words"—otherwise, it would have used the language it had just employed to that end. Moreover, even if the Court intended to sanction a reliance on a "description in words" there, it did so only to the extent that such a description "explain[s] the illustrations" at issue.

As noted above, the illustrations in the '106 Application do not depict the same spout tip shape claimed in the '465 Patent (LNC would not be making its word-based "oval" argument if they did). Thus, while the '106 Application's use of the term "oval" to describe the spout tip depicted in the illustrations there might be appropriate in the broadest sense, the use of that term cannot alter the illustrations such that they encompass something that they do not actually depict— *i.e.*, the spout tip shape later claimed in the '465 Patent. This is particularly true given the vagueness and breadth of the single word "oval." As such, *Racing Strollers* is no help to LNC here.

Once again, LNC simply has not met its burden of coming forward with evidence to establish that the '106 Application provides written description support

for the shape of the spout tip claimed in the '465 Patent. In addition, the PTAB's conclusion "the spout tip of the claimed design has a different, more rounded, oval shape than that of the racetrack shape of the spout tip in the '106 application" is supported by substantial evidence—again, the illustrations themselves. The '106 Application's failure to support the '465 Patent in this regard is also therefore sufficient to deny the '465 Patent priority to the '106 Application

### 3. There are several additional grounds for affirming the PTAB's conclusion on priority

In addition to the three differences relied upon by the PTAB, there are several additional differences between the '465 Patent and the '106 Application that provide further grounds for affirming the PTAB's conclusion that the '106 Application does not provide written description support for the '465 Patent. "On judicial review, the correctness of the decision appealed from can be defended by the *appellee* on any ground that is supported by the record, whether or not the appellant raised the argument." *Rexnord Industries, LLC v. Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013) (emphasis in original).

First, both the spout tip and the vent claimed in the '465 Patent are devoid of any slits or holes, while both the spout tip and vent disclosed in the '106 Application contain slits:

| U.S. Patent D617,465 | U.S. Application No. 10/536,106 |
|:---:|:---:|



| Fig. 3 | Fig 12A |
|:---:|:---:|

(A21, A746).  In its unsuccessful motion to amend below, LNC attempted to add slits in the spout tip and vent (though it did so via dotted line) in an effort to "conform the drawings in the '465 patent to those of its parent application." (A131; *see* A140).   In the absence of amendment, the '465 Patent does not conform to the disclosures of the '106 Application.

Second, the spout claimed in the '465 Patent contains unclaimed notching on its sides, and the collar of the spout contains a number of unclaimed ridges on its sides.  The spout depicted in the '106 Application, however, contains solid-line notching on its sides and the spout collar contains five solid-line ridges on each of its sides:

| U.S. Patent D617,465 | U.S. Application No. 10/536,106 |
|:---:|:---:|
|  | |
| Fig. 2 | Fig 10B |

(A20, A744).  In its unsuccessful motion to amend below, LNC attempted to add notches to the side of the spout collar, claiming at that time that such notches are "shown in the figures of the '106 Application."  (A141; *see* A129, A132).  In the absence of amendment, the '465 Patent does not conform to the disclosures of the '106 Application with respect to these notches.  Moreover, an applicant is not "permitted to disclaim any portion of his original design in a continuation and still survive the written description test."  *In re Owens*, 710 F.3d at 1367.  LNC therefore cannot change the solid-line notches and ridges in the '106 Application to dashed-line notches and ridges in the '465 Patent and still be entitled to priority.

Third, the vent hole claimed in the '465 Patent is denoted by a single ring,

and is thus concave or recessed.  The vent hole disclosed in the '106 Application,

however, is (with only one exception[9]) denoted by two rings and is raised:



| U.S. Patent D617,465 | U.S. Application No. 10/536,106 |
|---|---|
| Fig. 3 | Fig 12A |

(A21, A746).  In its unsuccessful motion to amend below, LNC attempted to add a

raised rim to the vent claimed in the '465 Patent, again claiming at that time that a

---

[9] LNC goes out of its way to argue that the "raised rim" is not at issue on appeal.  (*See* Blue Br., at 65).  As noted above, however, the fact that the PTAB did not expressly rely upon the difference between a raised and recessed rim in finding that LNC is not entitled to priority does not preclude this Court from considering this difference as an additional, alternative ground for affirming the PTAB's conclusion.  In addition, to the extent that LNC relies upon a single drawing in the '106 Application to argue that the application discloses a recessed vent, its argument is misplaced.  Figure 8E of the '106 Application is clearly inconsistent with all of the remaining drawings disclosed there.  (*See* A742-46). Thus, if there is an overall understanding to be gained about the nature of the vent disclosed in the '106 Application, such understanding would be based on all of the other consistent disclosures of a raised rim vent.

raised rim is "shown in the figures of the '106 Application." (A141; *see* A129, A132). Again, in the absence of amendment, the '465 Patent does not conform to the disclosures of the '106 Application with respect to this feature.

For all of these reasons, this Court should affirm the PTAB's conclusion that the '106 Application does not provide written description support for the '465 Patent—regardless of the points that LNC raises on appeal concerning other differences between the '465 Patent and '106 Application.

### D.   LNC had the burden of coming forward with evidence of the level of ordinary skill, though a finding on the issue was not necessary

LNC lastly argues that Munchkin failed to carry its burden of proof before the PTAB because it allegedly did not "establish the level of ordinary skill relative to the teachings of the '106 application or how one of ordinary skill would have construed such teachings." (Blue Br., at 67). This argument fails for at least two reasons.

First, LNC once again erroneously assumes that Munchkin had the burden of coming forward with evidence on the issue of priority. As explained above, although it is true that Munchkin had the overall burden of establishing unpatentability below, once LNC admitted that the references relied upon by Munchkin would render the '465 Patent invalid should it not be entitled to the filing date of the '106 Application, *LNC* had the burden of coming forward with evidence on the issue of priority. (*See* Section B.1., *supra*). Thus, LNC had the burden of coming forward with evidence that the '106 Application supports the

'465 Patent, including any evidence of the level of ordinary skill pertinent to that inquiry.  To the extent that LNC perceives a failure of evidence on this issue, the failure is its own.

Second, regardless of which party carried the burden to move forward with evidence of the level of ordinary skill, a finding on the issue was not necessary in this case.  Although LNC recites the boilerplate standards applicable to the written description requirement, it fails to note this Court's holdings that "the absence of specific findings on the level of skill in the art does not give rise to reversible error 'where the prior art itself reflects an appropriate level and a need for testimony is not shown.'"  *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) (quoting *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir. 1985)).

Here, the technology and design attributes underlying the '465 Patent are not complex.  Moreover, the prior art—much of which is directly related to the '465 Patent itself—utilizes the same underlying technology and design attributes as the '465 Patent, and therefore plainly reflects an appropriate level of skill.  Just like this Court held in *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 n. 2 (Fed. Cir. 1983), "the subject matter of the patent and the prior art were in this case so easily understandable, a factual determination of the level of skill in the art was unnecessary."

Notably, LNC makes no argument that the PTAB's failure to make any specific finding of the level of ordinary skill had any actual effect on its decision. Nor does LNC point to any specific aspect of the subject matter of the '465 Patent or the prior art that might render a finding of a minimum level of skill necessary. It is not enough for LNC merely to make "a naked allegation that some unspecified higher level of skill should have been applied." *Chore-Time Equipment*, 713 F.2d at 779 n. 2; *see In re Chaganti*, 554 Fed. Appx. 917, 922 (Fed. Cir. Jan. 27, 2014) ("Mr. Chaganti has not made any showing that a finding regarding the level of ordinary skill would impact the ultimate conclusion of obviousness under section 103.").

For these reasons, LNC's baseless and conclusory argument therefore cannot warrant reversal.

## CONCLUSION

After having committed to an attempt to amend the '465 Patent below, LNC forges an almost entirely new path on appeal. But it cannot outrun the ramifications of its failure to pursue its current arguments at an earlier date. LNC simply did not do enough below to support those arguments now.

Moreover, and in any event, the '106 Application does not support multiple aspects of the design claimed in the '465 Patent, no matter how far LNC seeks to stretch the disclosures of the '106 Application. The illustrations of the '106 Application are what they are and, as LNC's own arguments and prior effort to

amend the patent make clear, they simply do not conform to the figures of the '465

Patent.  As such, Munchkin respectfully requests that the Court affirm the PTAB's

findings that the '106 Application does not provide written description support for

the claim of the '465 Patent, that the '465 Patent is therefore not entitled to the

benefit of the filing date of the '106 Application, and that the '465 Patent is invalid

as obvious over Hakim ('604) and Hakim ('225).

Dated:  November 10, 2014                         Respectfully Submitted,

                                                   LATHROP & GAGE LLP

                                                   /s/ R. Cameron Garrison
                                                   R. Cameron Garrison – Principal Counsel
                                                   Travis W. McCallon
                                                   2345 Grand Blvd., Suite 2200
                                                   Kansas City, MO 64105
                                                   Phone:  816.292.2000
                                                   Fax:    816.292.2001
                                                       Email:  rgarrison@lathropgage.com
                                                                    tmccallon@lathropgage.com

                                                   A. Justin Poplin
                                                   10851 Mastin Blvd. Bldg. 82 Suite 1000
                                                 Overland Park, KS 66210-1669
                                               Phone:  913.451.5100
                                               Fax:    913.451.0875
                                               Email:  jpoplin@lathropgage.com

                                               ATTORNEYS FOR APPELLEE
                                               MUNCHKIN, INC.

# United States Court of Appeals
## for the Federal Circuit
*Luv N' Care Ltd v. Munchkin, Inc.,* No. 2014-1653
### CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by LATHROP & GAGE, LLP, Attorneys for Appellee to print this document.  I am an employee of Counsel Press.

On **November 10, 2014,** counsel has authorized me to electronically file the foregoing **Brief of Appellee** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

EDWARD D. MANZO (Principal Counsel)
GEORGE S. PAVLIK
DANIEL KIM
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Suite 2200
Chicago, Illinois  60606
Telephone:  312-655-1500
edward.manzo@huschblackwell.com
george.pavlik@huschblackwell.com
daniel.kim@huschblackwell.com
*Counsel for Appellant*

HARTWELL P. MORSE, III
LUV N' CARE, LTD.
3030 Aurora Avenue
Monroe, Louisiana  71201
Telephone:  318-338-3108
hartwellm@nuby.com
*Counsel for Appellant*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

November 10, 2014

/s/ Elissa Matias
Elissa Matias
Counsel Press

55

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE
REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X    The brief contains 11,980 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

     The brief uses a monospaced typeface and contains      lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X    The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font or

     The brief has been prepared in a monospaced typeface using MS Word 2002 in a ___ characters per inch_____ font.


November 10, 2014_____      /s/ R. Cameron Garrison_____
Date                               R. Cameron Garrison
                                       LATHROP & GAGE LLP
                                       Counsel for Appellee